LEMMON, Judge.
Plaintiff has appealed from a judgment dismissing his suit against his landlord for damages sustained in an apartment house fire. The issue on appeal is whether the trial court erred manifestly in concluding plaintiff failed to prove the fire was caused by defective electric wiring.
I
The physical make-up of the apartment was: As one entered plaintiff’s apartment through the front door, there was a living room to the right and a dining area to the left. Straight ahead from the front door and beyond the living room was a hall, which served as a passageway to two bedrooms on the right and to the kitchen and a third bedroom on the left.
When the mid-morning fire began, plaintiff was asleep in the first bedroom to the right (directly behind the living room). His wife and children were away at the time.
Plaintiff testified: He had gone out earlier that morning for his regular Saturday trip with his son for coffee and doughnuts.. When they returned, they watched television in that bedroom, and after he fell asleep, his son apparently left the apartment. Smelling smoke when he woke up, he opened the door leading from the bedroom into the hall and encountered fire and intense heat. He couldn’t see anything because of dense smoke, but when he turned and saw light in the direction of the window in the bedroom’s outside wall, he escaped by breaking the window open. His exposure to the fire, heat and smoke caused severe burns and lung damage.
In support of his assertion that the fire was caused by an electrical defect plaintiff presented an electrical engineer experi *1298 enced in fire investigation. Based on his inspection of the apartment 17 days after the fire and his examination of photographs taken four days after the casualty, as well as the sequence of events related by plaintiff, the expert opined that the fire was caused by a short circuit in the cable which served the electric heating element and started in the void space above the hall ceiling, where he found the most fire damage to the wooden members of the building structure. At that location he also found a section of the cable where the wires had beaded or fused together and burned through. While he admitted the beading could have been caused by external heat from a fire started elsewhere, he took the view that a short circuit in the cable caused the beading, because the outer jacket of the cable was still intact to a large extent except where the cable had burned through.
Relying on this premise, the expert then theorized that as the fire in the confined area intensified and began to burn through the ceiling, some burning material fell to the floor of the hall and started a fire there, which spread to the combustible materials in the hall. Then, either after plaintiff opened the bedroom door or after the fire burned through the door, the fire spread into the bedroom and eventually intensified in the direction of the broken window, which upon being opened became a new source of oxygen.
Defendants’ position was that the fire started in the bedroom occupied by plaintiff, from some heat producing source, and then spread through the open bedroom door, upward to the return air plenum of the air conditioning unit (an enclosure in the unit where the air pressure is greater than outside), located in the hall ceiling, where there was heavy fire damage to exposed studs and joists in the area of the chamber. (This is the same area where the broken cable with beaded wires was found.)
The parish’s chief of fire prevention inspected the apartment immediately after the fire, and an electrical engineer inspected it within two days. They found that the major fire damage was in the bedroom and the hall ceiling, that the bedroom door had been consumed and the doorframe charred, that only the bare springs of the bed near the door remained, but that a wooden bookshelf in the hall across from the bedroom door had little fire damage and that the principal fire damage in the hall was high on the walls and in the ceiling. The fire chief opined that the fire started in the area of the bed, perhaps from plaintiff’s smoking in bed and falling asleep with the cigarette dropping on or near the bed, and that the fire spread from the bedroom and followed an upward path of destruction, burning the wooden doorframe and regenerating when the flames reached the new source of oxygen in the return air plenum.
The electrical engineer added his opinion that the failure of the wire (relied on by plaintiff’s expert) was caused by external heat, rather than a defect in the wire itself, since the major damage to the wiring was “fairly close to the confines or major areas of heat above the ceiling with the insulation in tact (sic) as soon as you left this area”.
Defendants also presented two residents of the apartment complex, who were standing across the walkway from plaintiff’s apartment when smoke was first detected. They opened the front door of the apartment and (although there was smoke, it was not hard to see) saw low flames (about two feet high) coming from the doorway to the bedroom on the right of the hall, but saw no flames in the hall ceiling or in the hall, except those coming from the bedroom. They heard someone in the bedroom and went for help. Upon returning, the flames were much higher, and they heard glass breaking in the area of the side window.
In rebuttal plaintiff also presented a chemical engineer who opined that the fire had started in the return air plenum and had spread through the air conditioning duct to the bedroom and eventually to the broken window. He discounted the possibility of a mattress fire, stating that a cigarette on a cotton mattress will cause a fire which smolders for hours without igniting and that the mattress in this case was probably consumed by a sustained external flame, which originated elsewhere and which burned the mattress after the win *1299 dow was broken. He reasoned that most of the fire damage was in the bedroom because there was more combustible materials in that room than in the hall.
II
Defendants’ experts’ theory was based on the fact that there was heavier charring on the inner side of the bedroom doorframe, indicating that side was exposed to the fire for a longer period; the fact that the low wooden bookshelf in the hall was hardly damaged and that the pantry door next to the kitchen was burned only at the top, indicating the fire in the hall did not burn intensely on or near the floor; the fact that the fire damage on the lower walls of the hall was not uniform on both sides, but was concentrated on the bedroom side; the fact that there was little or no damage in the hall toward the living room, which would have been the more likely direction of acceleration if the fire had started above the hall ceiling and regenerated on the floor with the bedroom door closed; and the information received at the scene that plaintiff was a heavy smoker and drinker. (Burn holes were discovered in the mattress in the master bedroom in the rear, and two bottles of vodka were found under the bed, with at least 24 more being found scattered throughout the apartment.)
Significantly, this theory was entirely consistent with the testimony of the two independent witnesses who saw flames only from the bedroom doorway and not from the hall or ceiling at the early stages of the fire and prior to plaintiff’s escape from the bedroom.
On the other hand, the theory of plaintiff’s experts was contradicted by the independent testimony of the residents and to some extent by the physical evidence. The impressive testimony of plaintiff’s electrical engineer was weakened by the admissions that although the principal damage to wooden members of the structure was in the void space above the hall ceiling (where the members were exposed), the studs and joists in the bedroom were protected by noncombustible wallboard which retarded the fire; that from the damage .visible in the bedroom at the time of his inspection he would have expected that a fire originating in the hall ceiling would not have entirely consumed the bed; that under his theory the wooden furniture in the hall would probably have been consumed; that if the fire had regenerated on the hall floor and the bedroom door was closed, the door would have acted as a retardant and the fire would have intensified in the direction of the open living room, particularly if the front door had been opened; and that if the flooring and the furniture in the hall and in the bedroom were composed of materials of equal combustibility, there would probably have been greater fire damage in the hall. Also, that expert’s principal basis for fixing the point of origin was the persuasive finding of the beaded wire with little damage to the insulation beyond the point of beading, but that cable ran from the point of the break toward the kitchen (across the hall from the bedroom) where the fire damage was less.
Moreover, plaintiff’s chemical engineer, after expressing an entirely different theory as to the spread of the fire, withdrew to some extent upon learning that there had been no fire damage in the air conditioning duct to the bedroom. His theory as to spreading also conflicted with plaintiff’s testimony that the fire was in the lower part of the hall before reaching the bedroom. Therefore, the main import of his testimony was that this was not a mattress fire; however, that does not rule out defendants’ experts’ theory that the fire started in some combustible material in the bedroom.
Ill
This case does not involve, as plaintiff suggests, a choice between deciding whether the fire was caused by an electrical defect or whether it was caused by smoking in bed. This case turns on a question of burden of proof and involves a determination of whether the evidence, taken as a whole, establishes that the fire, more probably than not, was caused by some fault imputable to this defendant.
*1300 The plaintiff has the burden of proof in a circumstantial evidence case, and he has borne that burden only when the evidence taken as a whole indicates the defendant’s fault was the most plausible or likely cause of the fire and when no other factor can as reasonably be ascribed as the cause. Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972); Hanover Ins. Co. v. Jacobson-Young, Inc., 294 So.2d 564 (La.App. 4th Cir. 1974). The likelihood of causation due to the particular defendant’s fault must preponderate over the likelihood of causation from any other factor.
In the present case there was a considerable amount of impressive circumstantial evidence from which one could reasonably conclude that the fire was caused by an electrical defect'. However, there was also a considerable amount of impressive circumstantial evidence from which one could just as (or more) reasonably conclude that the fire was not caused by any defect in the premises or any other fault attributable to the landlord. Therefore, the evidence does not preponderate in plaintiff’s favor.
The judgment is affirmed.

AFFIRMED.