419 So.2d 86 (1982)
Billy Mack CALDWELL, Plaintiff-Appellant,
v.
TEXAS INDUSTRIES, INC., d/b/a Louisiana Industries, Defendant-Appellee.
No. 14932.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1982.
Rehearing Denied September 24, 1982.
*87 Albert W. Block, Jr., Monroe, for plaintiff-appellant.
Hayes, Harkey, Smith & Cascio, by Thomas M. Hayes, III, Monroe, for defendant-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, JJ.
FRED W. JONES, Jr., Judge.
Plaintiff appeals a district court judgment dismissing his personal injury action after the presentation of his case in chief, pursuant to La. C.C.P. Article 1810(B)[1]. The following issues are posed on appeal:
(1) Did the trial judge apply the incorrect standard of proof in ruling on the motion for a directed verdict?
(2) Even if the trial judge applied the correct evidentiary test, did plaintiff fail to discharge his burden of proof?
Finding that the trial judge correctly applied the "preponderance of evidence" standard of proof in ruling on the motion for a directed verdict, but was clearly wrong in concluding that plaintiff had failed to discharge that burden, we reverse and remand.
Plaintiff alleged in his petition that on February 22, 1977, he was employed as a carpenter by Redrock Construction Company ("Redrock"), the general contractor on an expansion project for Olinkraft, Inc. in West Monroe; that, pursuant to a sales contract with Redrock, Texas Industries, Inc., d/b/a Louisiana Industries ("L.I.") was furnishing concrete for the expansion project; that a driver of one of the L.I. concrete trucks washed out the tank of his vehicle and negligently left a residue of wet concrete on a paved street in the area where plaintiff was working; and that on February 22, 1977 plaintiff stepped on the wet concrete, slipped and fell, and suffered disabling back injuries for which L.I. is assertedly liable in damages.
At the trial on the merits, after plaintiff concluded the presentation of his case in chief, defendant moved that plaintiff's action be dismissed under the provisions of Article 1810(B). In sustaining the motion, the trial judge ruled that plaintiff had failed to prove his case by a preponderance of the evidence and, specifically, failed to *88 prove that an employee of L.I. had "dropped or left or failed to clean up the specific concrete that Mr. Caldwell fell in."
Plaintiff argues that, rather than applying the "preponderance of evidence" standard of proof, the trial judge should have simply determined whether plaintiff's evidence was such that reasonable and fair minded men could not have arrived at a verdict in his favor. This contention is clearly without merit. As we pointed out in Gleason v. City of Shreveport, 393 So.2d 827 (La. App. 2d Cir. 1981):
"Unlike a motion for a directed verdict in a jury trial, La. C.C.P. Art. 1810(B) requires a judge to evaluate all of the evidence and render a decision based upon a preponderance of the evidence without any special inferences in favor of the opponent to the motion. (citation omitted) Proof by a preponderance of the evidence simply means that, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not (citations omitted)."
Also see Murray v. Haspel-Kansas Investments, 395 So.2d 453 (La. App. 4th Cir. 1981).
Consequently, we find that the trial judge applied the correct standard of proof in ruling on defendant's motion to dismiss under Article 1810(B).
We now turn to the correctness of the dismissal itself.
On the critical issue of proof that an employee of L.I. spilled or deposited on the street the wet concrete on which he fell, plaintiff testified for himself and also presented the testimony of his foreman, Kenneth Carpenter; a fellow worker, Archie Smith; and his union business agent, Robert Gambino.
As explained in a general way by this testimony, in connection with the expansion project in question, Redrock's carpenters were preparing and setting forms into which concrete (delivered by L.I.'s trucks) was poured. A blacktop road, use of which was restricted to construction vehicles, ran in the vicinity of the work site. When the forms into which the concrete was to be poured were near the blacktop road, L.I.'s drivers simply stopped their trucks at the edge of the road and, by the use of chutes, poured directly into the forms. Invariably, this process resulted in some spilled concrete which the truck drivers were responsible for removing or cleaning up.
When the forms were too far from the road for direct pouring of concrete through chutes from L.I.'s trucks, the concrete was conveyed to the forms by several methods wheelbarrows, concrete conveyors, or "cherry pickers" (hydraulic cranes with bucket attachments). These various implements or conveyors were under the control of Redrock employees, who were responsible for the concrete upon its deposit into any of them for transport to the forms. Spillage of concrete during this conveyance process was also common.
Plaintiff testified that at midmorning on February 22, 1977, in connection with his work he was carrying the back end of a 4 x 8 plywood form down the described blacktop road when he stepped into some wet concrete residue and fell on his back. He described the substance on which he slipped as "drippings from chutes and left over concrete, more water, sand and cement than it was rocks, and approximately 18 inches in diameter by one inch thick." It was situated near the edge of the blacktop road. Plaintiff had seen a concrete truck belonging to L.I. in the vicinity that morning.
Plaintiff's foreman, Carpenter, stated that he saw plaintiff slip and fall on the wet concrete residue, and immediately examined the material which had been deposited on the edge of the blacktop road. He described it as looking like "concrete when you pour it out and it sets a little bit, water accumulates on the top and a thin film of cement ... looks kind of like mud, brown like mud or something." Carpenter said that the puddle was about three feet in diameter and its appearance was consistent with spillage from a concrete chute.
Carpenter testified that, although concrete trucks owned by other parties could *89 conceivably travel this blacktop road, he had observed only L.I.'s concrete trucks on it the morning of plaintiff's accident.
Smith also witnessed plaintiff's accident and inspected the site of the slip and fall, which he described as an 8' x 10' wet area where it appeared that someone had washed out a concrete truck. In fact, Smith testified that he had seen one of L.I.'s concrete trucks parked at that location on the morning of plaintiff's accident. Smith denied having observed concrete trucks belonging to anyone other than L.I. in the area that morning.
Smith further stated that, on the morning in question, neither "cherry pickers" nor other methods of conveying concrete were in use at the job site since the forms were close enough to the blacktop road for L.I.'s trucks to pour directly through their chutes.
Gambino simply corroborated the testimony of the other witnesses that L.I.'s concrete trucks were at the work site on the morning of plaintiff's accident.
Concededly, no witness testified that he actually observed one of L.I.'s truck drivers deposit on the blacktop road the concrete residue on which plaintiff slipped. However, as can be gleaned from our summary of the evidence presented by plaintiff, the following unrefuted salient points were made: L.I.'s concrete trucks, and no other, were traveling this blacktop road on the morning of the accident, and one truck was seen parked in the vicinity of the spot where plaintiff fell; the texture of the material on which plaintiff slipped appeared consistent with that washed out of a concrete truck; the location of the concrete residue near the edge of the blacktop road was consistent with its being deposited from a concrete truck rather than by some other method; neither "cherry pickers", wheelbarrows nor other concrete conveyors were being used on the morning in question, negating the spillage of the concrete residue by one of these devices; and water on the surface around the concrete residue indicated it had been washed out of a truck rather than thrown on the road by one of Redrock's carpenters or laborers.
We can only conclude, based upon this unrebutted circumstantial evidence, that plaintiff proved it was more probable than not that the concrete residue on which he slipped was deposited by one of L.I.'s truck drivers, who was responsible for but failed to clean up or remove the material from the surface of the blacktop road. Consequently, at the conclusion of the presentation of his case in chief plaintiff had proved defendant's negligence by a preponderance of the evidence. The trial judge was clearly wrong in holding to the contrary.
For these reasons, we reverse the judgment of the district court dismissing plaintiff's suit, overrule the motion to dismiss, and remand the case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to appellee.
NOTES
[1] B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.