441 So.2d 472 (1983)
Billy Mack CALDWELL, Plaintiff-Appellant,
v.
TEXAS INDUSTRIES INC., d/b/a Louisiana Industries, Defendant-Appellee.
No. 15823-CA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1983.
Albert W. Block, Jr., Monroe, for plaintiff-appellant.
Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, III, Monroe, for defendant-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
*473 JASPER E. JONES, Judge.
Billy Mack Caldwell, plaintiff in this slip and fall case, appeals a judgment rejecting his demand for damages against Texas Industries Inc. d/b/a Louisiana Industries. The trial court found plaintiff failed to establish that the concrete upon which he slipped and fell was deposited in his work area by the defendant. We affirm.
The plaintiff was a carpenter employed by Redrock Construction Company on February 22, 1977. Redrock was a contractor engaged in construction work at the site of Olinkraft's paper mill in West Ouachita Parish. Plaintiff was a member of one of Redrock's carpenter crews that was engaged in the construction of forms for the concrete foundation for a new Olin paper machine designated as Machine # 7 and located in Olin paper mill complex. The defendant was supplying the ready-mix concrete required in the construction of the foundation for the paper machine. The concrete was delivered by the defendant in large trucks equipped with large steel drums into which the concrete was loaded at the defendant's plant and from which it was delivered to Redrock at the Olin site. The only employee of defendant on the truck was the driver of the truck. The foundation for # 7 paper machine was located adjacent to a black-top road which traversed the Olin property and which had been abandoned as the former Jonesboro Road. The new Jonesboro Road was located west of the Olin property and the abandoned Jonesboro Road at the time of the facts upon which this litigation is based was located exclusively within the confines of the Olin property and was used as an inner-plant route of transportation by Olin and its contractors. Part of the foundation for the # 7 paper machine was located at such close proximity to the black-top road that the concrete could be poured into the forms for the foundation directly from the chute attached to the defendant's truck while it was parked upon the roadway. This chute could be extended to a length of 13 feet. Other parts of the foundation were located at such a distance from the black-top road that the concrete could not be poured into them from the chute attached to the delivery truck. The concrete placed in these more remote forms was delivered to them by wheelbarrows, concrete conveyors and cherry-pickers (a crane-like device that picks up a bucket of concrete at the truck and moves it to the desired location and there dumps it). The concrete was placed from the truck into the wheelbarrows, concrete conveyors or cherry-picker buckets and thereafter transported by these respective conveyances to the more remote forms.
About 10:00 a.m. on the morning of February 22, 1977 the plaintiff, assisted by a laborer, was carrying a heavy 4' X× 8' previously constructed form to a location for installation in the foundation site for the # 7 paper machine. The form was being carried along the black-top road traversing the construction site. The laborer was carrying the front end of the form and was leading the direction of travel and the plaintiff was carrying the back end of the form. As the plaintiff was carrying the form he suddenly slipped and fell upon a pile of concrete residue located on the black-top road. The plaintiff described the concrete as being 18" in diameter and 1" thick. The form which the plaintiff was carrying obstructed his view of his pathway and he did not see the concrete residue until he had fallen into it.
The plaintiff allegedly sustained substantial personal injuries as a result of this fall. He contends that his fall was caused by the negligence of defendant's truck driver who deposited the concrete residue on the black-top road in the work area. He alleged in his petition that the concrete was washed from the tank of the defendant's truck following a delivery of the concrete cargo at the foundation site.
The plaintiff, two of his fellow carpenters and the Carpenter Union Business Agent all established the plaintiff's version of the accident to the effect that he fell after having slipped upon concrete residue. These witnesses all testified that the accident happened during the mid-morning at approximately 10:00 a.m. They all testified that *474 they had observed defendant's concrete delivery trucks in the area on the morning of and prior to plaintiff's slip and fall.
This testimony indicated that the chute on the rear of the defendant's truck was manipulated by defendant's driver during the delivery of the concrete. This testimony indicated that concrete was frequently spilled onto the roadway at the chute during unloading operations. Some of plaintiff's witnesses also testified they had observed on occasions the trucks being washed out on the roadway following their discharge of the concrete. This general testimony did not relate to the day of the accident nor to the day prior to it.
Archie Smith, one of the plaintiff's carpenter co-workers, testified that on the morning of the plaintiff's fall that all concrete delivered was being poured from the chute on the truck into the foundation forms and that no cherry-pickers, wheelbarrows, or concrete conveyors were being used in connection with the operation.
Archie Smith testified that he had observed one of the defendant's trucks parked in the immediate area where the plaintiff fell shortly before the plaintiff's fall. None of the plaintiff's witnesses testified they saw any concrete being washed from one of the defendant's trucks at the site where the accident occurred.
When the plaintiff rested after having produced the above summarized testimony on liability, the defendant in this bench trial moved to dismiss the plaintiff's suit pursuant to C.C.P. art. 1810(B) on the basis that plaintiff had shown no right to relief and the trial court sustained the motion and dismissed the plaintiff's suit.[1]
The plaintiff appealed the judgment sustaining the motion and dismissing his suit and we reversed the judgment of dismissal and remanded the case for a continuance of the trial. Caldwell v. Texas Industries, Inc., 419 So.2d 86 (La.App.2d Cir.1982). Following our review of the evidence offered by the plaintiff, we held the unrebuted evidence established that it was more probable than not that the concrete residue upon which the plaintiff slipped was deposited by one of the defendant's truck drivers. Following our reversal the trial of the case was resumed on March 16, 1983.
The defendant to rebut the plaintiff's case offered the testimony of its accountant, Tommy Neil Brackman, its superintendent, Emmett White and its dispatcher, Ronnie Drake.
Brackman testified that following the institution of this action and as the result of instructions from a superior he removed from the records of the defendant their work log for February 22, 1977, and the delivery tickets to Redrock for that date and made two photostatic copies of them, one copy of which he retained in his office. This witness further testified that he returned the original of these records to their prior location in a different office and that the original of these records were subsequently destroyed in a flood in September of 1978.
Ronnie Drake, who worked as the defendant's dispatcher on February 22nd examined the photostatic copies of the day's log and the delivery tickets and testified that they were prepared by him and the handwriting thereon was his. This log reflected that only 37 yards of concrete were delivered by the defendant to Redrock in five trucks on February 22, 1977. The first truck left defendant's plant at 1250 (12:50 p.m.), the second truck left there at 1300 (1:00 p.m.), the third truck left defendant's plant at 1335 (1:35 p.m.), the fourth truck left defendant's plant at 1515 (3:15 p.m.) and the fifth truck left defendant's plant at 1605 (4:05 p.m.). The first truck arrived at *475 Redrock at 1310 (1:10 p.m.), the second truck arrived at Redrock at 1320 (1:20 p.m.), the third truck arrived at Redrock at 1355 (1:55 p.m.), the fourth truck arrived at Redrock at 1535 (3:35 p.m.) and the fifth truck arrived at Redrock at 1625 (4:25 p.m.). Drake testified that he was at a vantage point on a second floor while serving as the dispatcher. He stated that he could see each truck as it departed and he noted the time, the truck number and the number of yards each truck contained as it departed the defendant's plant. The driver of each truck communicated with Drake by radio and advised him when he arrived at Redrock and when he departed from Redrock and Drake placed these times on the log. Drake also placed on the log the time each truck returned to the plant. He reviewed the log and stated that it was accurately maintained and that the deliveries just recited were all that the log reflected that Redrock received on February 22, 1977. The photostatic copies of the log and the delivery tickets were accepted in evidence by the trial judge. The truck numbers and yards of concrete on the delivery tickets corresponded with the information contained on the log. Also placed in evidence by defendant was Redrock's project diary for February 22, 1977 which reflected that the concrete poured on that date was 37 cubic yards which is the identical amount of concrete which the defendant's log and delivery ticket reflect were delivered to Redrock on the day in question.
Emmett White, the superintendent, and Ronnie Drake, the dispatcher, each testified that they were experienced concrete delivery truck operators and were required by their employer to make deliveries when a regular driver was not available to drive the truck. They each testified that though they made none of the deliveries on February 22nd, prior to that time they had made a number of deliveries to the Redrock site. These witnesses testified that during the removal of the concrete from the truck that the driver of the truck was required to operate the necessary controls to move the concrete containing the proper amount of water from the drum on the truck through the chute in the rear of the truck. The maneuvering of the chute to place the concrete in the position required by Redrock was handled by a Redrock employee engaged in the pouring of the foundation. They further stated that Redrock's employees usually scraped from the chute all residual concrete in order to obtain the full amount of concrete which was being delivered and for which Redrock was required to pay. These witnesses stated that Redrock's concrete crews knew exactly where in the forms they wanted the concrete placed and the amount of concrete to be placed in each specific spot.
These witnesses stated that the defendant had received specific written instructions from Olin that no concrete trucks were to be washed out on any Olin property other than at a designated wash-out area located near the exit of the Olin property. They testified that from 25 to 30 gallons of water were required to wash out the tank on the truck and a substantial amount of residue was removed from the truck during a wash-out procedure and created "quite a mess." They further advised they always conformed to this instruction and only washed their trucks out at Olin's designated dump site and that all of their drivers had been advised to comply with Olin's instructions. These witnesses further stated they had never received any complaint from Olin about any violation by their drivers of Olin's wash-out instructions. These witnesses testified that the cabs of the defendant's trucks were painted orange and the tanks were painted white at the time of the plaintiff's alleged injuries. They acknowledged that one of the defendant's trucks was painted solid white and decorated with an American flag and other patriotic symbols for the purpose of reflecting the 1976 bi-centennial celebration. They stated that in 1979 the tanks of the trucks were painted battleship gray and the cabs remained orange. This evidence conflicts with the testimony of the plaintiff and several of his witnesses as to the color of the trucks which they observed at the Redrock site on the morning of and prior to the plaintiff's fall *476 and which they stated belonged to the defendant.
The defendant's witnesses stated that other ready-mix concrete companies whose trucks were painted different from defendant's trucks occasionally used the road adjacent to the # 7 paper machine while making deliveries to other contractors performing work for Olin in its paper mill complex.
On remand the trial court, following the defendant's evidence, may then review all the evidence. The trial judge may make a credibility evaluation of the plaintiff's prior unrebutted testimony in light of the additional evidence offered by the defendant at the resumption of the trial following the reversal and remand by the appellate court. Leffingwell v. Atlas Asphalt Co., Inc., 376 So.2d 175 (La.App. 4th Cir.1979).
The plaintiff offered no rebuttal evidence after the defendant rested and relied solely on the evidence which he had produced at the initial trial at the time the defendant's motion to dismiss was sustained.
The issue is: considering all of the evidence introduced by the plaintiff and the defendant did the plaintiff establish by a preponderance of the evidence that a driver of the defendant's ready-mix concrete delivery truck place upon the black-top road the concrete upon which the plaintiff slipped and fell.
The plaintiff must establish the defendant's negligence by a preponderance of evidence. This burden of proof may be met by direct or circumstantial evidence. When the plaintiff relies upon circumstantial evidence the evidence taken as a whole must show the defendant's fault was the most plausible cause of the accident and exclude with a fair amount of certainty all other reasonable causes of the accident. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972); Hargis v. Travelers Indemnity Company, 248 So.2d 613 (La.App. 3d Cir.1971); Myers v. Morrow, 367 So.2d 1297 (La.App. 4th Cir. 1979); Blanchard v. Sotile, 394 So.2d 633 (La.App. 1st Cir.1980).
The commencement of the trial of this case was on November 10, 1981, more than 4½ years from the date of the accident sued upon and it was concluded following remand on March 16, 1983. Included in the trial judge's very excellent reasons for judgment are the following statements:
"One of the `weight' or `credibility' factors considered by this Court at the completion of plaintiff's evidence was the degree of what appeared to be substantial assumption or unconscious conclusion of ultimate fact (as contrasted from basic evidentiary fact) on the part of the witnesses. A number of circumstances contributed to this analysis: all of the principal witnesses were either members of the carpenter crew or carpenter's union who, on that job, had no direct involvement in the pouring of concrete and whose observation of the details of that activity could only have been rather incidental and casual; the very long and largely unexplined delays in the filing and ptoruyio together with the suit, together with the evidence indicating late-developing symptoms and realization of apparently serious injury, were strongly suggestive of delayed investigation of detailed facts; the distinct likelihood that such factors caused the witnesses to rely, probably without realizing it, upon subjective recall rather than actual knowledge; the demeanor, choice of words and responses of the witnesses to questions on cross-examination, as well as the overall content of their testimony. For those reasons, this Court did not find the evidence persuasive as proof of fact prima facie to establish the premise of defendant's liability."
. . . . . "The defense evidence not only flatly contradicts or `refutes' many crucial aspects of plaintiff's evidence, but it clearly confirms the earlier conclusion of the Court that plaintiff's witnesses were expressing assumptions and basing their testimony at least in part upon `hindsight' when reflecting at later times."
*477 The trial judge concluded by stating that the plaintiff's circumstantial evidence failed to establish by a preponderance of the evidence that the concrete upon which the plaintiff slipped and fell was deposited by a driver of one of the defendant's trucks. He recognized that the totality of the evidence showed a number of other reasonable possible explanations of how the concrete came to be in the plaintiff's path of travel other than that it was placed there by one of defendant's truck drivers.
Our own independent review of the evidence clearly establishes that the plaintiff had no witnesses that observed the concrete being placed on the black-top by one of the defendant's truck drivers and therefore it is apparent that the plaintiff is totally relying upon circumstantial evidence to establish his case against the defendant.
We further agree with the trial court's evaluation of the plaintiff's witnesses to the effect that they were testifying about facts which occurred 4½ years before the trial. They were further testifying about facts directly relating to the pouring of concrete for the foundation of the paper machine which was an aspect of Redrock's construction work with which they were not directly concerned and about which their knowledge would have been obtained only by casual observation rather than by their having been directly involved in the concrete pouring operation. These circumstances substantially detract from the quality and weight of their testimony. The plaintiff offered no testimony from any Redrock employee whose duties were directly related to the concrete pouring function as to the manner in which the defendant's concrete deliveries were made nor to the effect that concrete was delivered by the defendant on the morning of the plaintiff's fall.
The business records of the defendant and the testimony of its witness corroborated by the project diary of Redrock provide substantial evidence that no delivery of concrete was made to Redrock on the morning of plaintiff's fall. The defendant's evidence reflects that the first delivery of February 22nd did not arrive at Redrock until 1:10 p.m., about three hours after plaintiff's fall.
The plaintiff testified that he believed that on the morning of the accident the concrete was being poured by the use of cherry-pickers, though he was not absolutely certain. The only plaintiff witness who positively testified that all concrete was being poured directly from the chute on the truck on the date of plaintiff's accident was Archie Smith. Smith had earlier testified that he could not remember whether the concrete being poured on the morning of the plaintiff's fall was being poured in forms immediately adjacent to the black-top or being poured into forms more remote from the black-top. The significance of this inconsistency is that if the concrete was in fact being poured on the morning of and before the plaintiff's fall, it could have been placed in form foundations remote from the black-top which would have required that it be transported from the truck to its location by conveyances totally owned by Redrock and operated exclusively by its employees. Concrete could have fallen from Redrock receptacles while being so transported. Smith's uncertainty as to the location of the form being poured detracts substantially from his positive statement that all concrete being poured that morning was being poured directly from the truck.
We further note that even if concrete had been poured that morning and was being poured directly from the truck that positive evidence provided by the defendant was to the effect that Redrock employees handled the manipulation of the chute during the pouring operation. It could well have been that any concrete that fell from the chute onto the black-top during this pouring operation could have been placed there by virtue of the inattention of Redrock's employees and due to no negligence on the part of defendant's driver who was operating the necessary controls for the removal of the concrete from the tank of the truck.
We further observe there is evidence that Redrock's employees, after the concrete pour, frequently washed their concrete containers (wheelbarrows, cherry-picker buckets *478 and conveyor equipment) and finishing tools from a water supply source located upon the defendant's truck. The concrete residue upon which the plaintiff fell could have well came from the cleaning of their equipment by Redrock employees.
If the concrete upon which plaintiff fell was left upon the roadway from concrete pouring operations that occurred the previous day all of the observations we have made would still be applicable to the difficult problem of determining the source of yesterday's concrete.
Where there is a conflict in testimony, reasonable evaluation of credibility and reasonable inferences of fact made by the trial judge who has an opportunity to hear and see the witnesses testify, should not be disturbed upon appeal in absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After reviewing the totality of the evidence we find no manifest error in the trial court's conclusion that the plaintiff failed to prove that the most plausible cause of the accident was that one of the defendant's truck drivers washed his tank and/or chute and let the residue from the washing fall upon the black-top upon which the plaintiff later slipped. We further agree with the trial court that there are several other reasonable explanations as to how the concrete found its way upon the black-top for which the defendant had no responsibility. The concrete could have been dropped from the chute during the pouring operation due to the negligence of one of Redrock's employees. The concrete could have failed from a Redrock wheelbarrow or a Redrock cherry-picker or a Redrock concrete conveyor. The concrete could have been washed from a Redrock receptacle by a Redrock employee or from a Redrock concrete finishing tool by a Redrock employee. The failure of the plaintiff to prove that the concrete was deposited by the defendant's employee and that it was not left by a Redrock employee results in his failure to establish by circumstantial evidence the negligence of the defendant in causing his fall and damages which he here attempts to collect. Judgment AFFIRMED at appellant's cost.
NOTES
[1] C.C.P. art. 1810(B):

In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.