Judgment rendered April 1, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,521-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

WILLIE JAMES JONES,                     Respondents
STEPHANIE JONES THOMAS,
AND CASSANDRA DENISE JONES
O/B/O ROSEMARY G. JONES

versus

THE ESTATE OF LAWSON J.                 Applicants
SCHUFORD, JR. AND HORACE
MANN COMPANIES

* * * * *

On Application for Writs from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 642,740

Honorable Ramon Lafitte, Judge

* * * * *

PORTEOUS, HAINKEL & JOHNSON, LLP        Counsel for Applicants
By: Charles L. Chassaignac, IV
    Emily S. Morrison
    J. Brad Smitherman

DAVIS LAW OFFICE, LLC                    Counsel for Respondents
By: S. P. Davis, Sr.
    Kharmen K. Davis-Taylor

* * * * *

Before COX, STEPHENS, HUNTER,
MARCOTTE, and ELLENDER, JJ.

HUNTER, J., dissents with written reasons.

**ELLENDER, J.**

In this tragic case arising from a fatal house fire, the estate of the homeowner and its insurer filed a writ with this court contesting the trial court's denial of their motion for summary judgment against the claims of the owner's caregiver, who eventually died as a result of the fire. The matter was granted to docket for arguments and briefing in accordance with La. C.C.P. art. 966(H). For the following reasons, we grant the writ and reverse the trial court's denial of the defendants' motion for summary judgment.

## FACTS

On Friday, March 11, 2022, the Shreveport Fire Department ("SFD") responded to a residential fire at Lawson Schuford's home. Rosemary Jones, Schuford's caregiver, called 911 and told the dispatcher, "The stove is on fire." Schuford, who was bedridden due to infirmities, was in his bed when SFD arrived. Both he and Jones were pulled from the home and taken to the hospital. Schuford was deceased upon arrival from smoke inhalation; Jones eventually died on October 2, 2023, from the effects of smoke inhalation and burns to her upper body and face.

At the time of the fire, Schuford had been bedridden for some time. While he was able to reside in his home, Jones had been his full-time caregiver for more than 15 years. In addition to caring for his personal needs, her responsibilities included cleaning, running errands, booking appointments, shopping, scheduling maintenance/repairs for the house, and cooking. According to Jones' daughter, prior to being bedridden, Schuford fried fish every Friday. When he was no longer able, Jones continued this tradition by frying fish for Schuford. March 11, 2022, was a Friday.

Even though Jones survived for a year and a half after the fire, her serious condition preventing her from giving any statement as to how the fire started. However, following his investigation, SFD Investigator Lawrence Bunton concluded the fire likely originated in the kitchen on the front right burner of the stove. Three of the four burners on the electric range had a pot or pan on them, including the front right burner, and the knob for the front right burner appeared to be activated and on. Bunton's report noted gas and electric services were supplied to the house, but both meters had been removed by the utility companies prior to his investigation. Ultimately, Bunton found while the exact cause of the fire was unknown, it appeared to have originated on the stovetop, which was consistent with what Jones told the 911 dispatcher.

Randy Stephens, an employee of EFI Global, also performed an investigation into the cause of the fire, on behalf of the insurer. Stephens' report stated the fire originated in the kitchen, on the stovetop, as a result of cooking oil being heated to its ignition temperature before catching fire in a pan on the front right stove burner. After this determination, other potential heat sources in the area were considered and excluded, including an electric toaster located next to the cooktop that was not plugged into a power source. Stephens reported no evidence existed showing the cooktop malfunctioned due to its wiring or heating elements, and the range controls revealed the right front heating element control was in the "on" position. He also observed neither the natural gas furnace nor the electrical panel showed any signs of heat or fire effects.

The record indicates no additional investigations were requested or conducted by either party.

# PROCEDURAL HISTORY

On March 13, 2023, Jones' husband and daughters filed suit against Schuford's estate and his homeowner's insurer alleging Schuford was negligent in failing to maintain a safe home environment, failing to maintain a safe workplace, and failing to safely maintain all gas lines and appliances in his home. The plaintiffs claimed these failures resulted in the house fire that caused Jones' ultimate death in October 2023, due to complications from the burn injuries she sustained in the fire.

The defendants filed two motions for summary judgment. The first, filed in January 2024, argued the plaintiffs failed to produce any evidence showing they could prove the claims contained in their petition. Because none of the evidence available in the case proved Schuford was responsible for the fire, and because the plaintiffs provided no evidence to refute the findings made by Investigators Bunton and Stephens, the defendants argued all claims against Schuford and his insurer should be dismissed.

The defendants further argued the evidence the plaintiffs would need to show Schuford was liable for the house fire simply did not exist. The only two people who had actual knowledge of what occurred were now both deceased, there were no investigative reports contradicting those rendered by Bunton and Stephens, and there was no testimony to contradict Jones' statements to 911 dispatch. Because the plaintiffs did not, and could not, produce any relevant evidence in support of their claims, the defendants argued their motion for summary judgment should be granted.

In support, the defendants attached a copy of the discovery responses provided to them by the plaintiffs, as well as an affidavit from Stephens, stating he was a senior fire investigator with EFI Global with 38 years of

experience in fire investigations. In addition to setting out his qualifications and experience, the affidavit laid the foundation for his investigative report, which was also attached in support of the motion. The motion was set for hearing on April 1, 2024.

On March 19, 2024, the plaintiffs filed an amended petition. In addition to claiming Schuford's estate and homeowner's insurer were liable for the injuries and economic loss sustained by Jones in the house fire, they also claimed Schuford's homeowner's policy provided both liability and medical coverage to domestic employees injured in the course and scope of their employment as a result of an accidental fire occurrence. All other claims remained the same as those made in the initial petition, including that Schuford failed to maintain a safe home and work environment, and his gas lines and appliances caused the fire at issue.

On March 27, 2024, only five days prior to the hearing on the defendants' first motion for summary judgment, the plaintiffs filed an untimely opposition, arguing genuine issues of material fact existed as to whether the homeowner's insurance provided coverage for "domestic employees," whether Jones was a "domestic employee," and the actual cause of the fire. The plaintiffs claimed Jones was a domestic employee, and as such, she was entitled to the liability coverage detailed in Schuford's homeowner's policy. They argued no fault determination was necessary in order for them to recover under this liability coverage, and suggested the policy provided a workers' compensation type-coverage for domestic employees hurt in an accident while performing work at the home.

As to the cause of the fire, the plaintiffs claimed there was no evidence Jones started it, and no evidence Schuford did not; in essence, there

4

was insufficient evidence to allow an accurate determination of what actually caused the fire. The plaintiffs also argued the report of Stephens was unreliable because he did not scientifically test the gas or electrical lines to determine if they were dangerous or defective, further supporting their argument a genuine issue of material fact existed that would preclude summary judgment. They also claimed Stephens' report was unreliable and should not be considered because he was not accepted as an expert in fire investigation, and they argued he mischaracterized Bunton's report by stating he determined the fire originated on the stove. Finally, the plaintiffs noted Bunton's report concluded the exact cause of the fire was unknown. For these reasons, they contended summary judgment should be denied. In support, the plaintiffs attached a copy of the homeowner's insurance policy, as well as an affidavit from Bunton which outlined his past work experience and laid the foundation for his report.

The defendants filed a reply, arguing the plaintiffs' opposition was untimely and should not be considered, pursuant to La. C.C.P. art. 966(B)(2). The defendants also argued even if the trial court did consider the untimely opposition, the plaintiffs still failed to raise any genuine issues of material fact. They contended a fault determination was absolutely necessary for the plaintiffs to recover damages from the insurer because the homeowner's policy was a liability policy that provided coverage to domestic employees only in cases where the homeowner was found liable for injuries sustained by a third party due to the domestic employee's negligence. Finally, the defendants claimed the plaintiffs' quarrel with Stephens' report lacked merit, as his report was attached to his affidavit, and established the proper foundation. The defendants also pointed out the

plaintiffs offered no expert report of their own to rebut Stephens' report, instead relying on the report of Bunton, which the defendants contended was not contradictory as both investigators found the fire likely originated on the front right burner of the stovetop. Ultimately, the defendants argued the plaintiffs could not rely on a lack of factual support as to the cause of the fire to defeat summary judgment.

On the date of the summary judgment hearing, April 1, 2024, the plaintiffs orally requested to continue, which the trial court granted.

The defendants filed a second motion for summary judgment on August 1, 2024, wherein they again argued no genuine issues of material fact existed as to the cause of the fire, and the plaintiffs could provide no evidence to support the claims made in their original or amended petition. The arguments and attached evidence mirrored those in the first motion for summary judgment, which the trial court never ruled on. A hearing on the second motion was originally scheduled for October 14, 2024, but was ultimately continued and reset for hearing on March 31, 2025. The plaintiffs filed no opposition to the second motion for summary judgment.

## ACTION OF THE TRIAL COURT

At the hearing on the second motion, the trial court allowed the plaintiffs to offer and introduce into the record the untimely opposition to the first motion, along with the attached exhibits. The trial court then denied summary judgment, stating competing opinions had been submitted as to what caused the fire, creating a genuine issue of material fact as to causation. The trial court also noted the homeowner's policy provided coverage for accidental occurrences, and the issue of whether the fire was accidental, and thereby covered by the liability provisions, was also a genuine issue of

6

material fact. The defendants requested written reasons for judgment, to which the trial court submitted a transcript of its oral reasons for its ruling, followed by a writ application to this court. After reviewing defendants' writ, this court granted the matter to docket, briefs were submitted by both parties, and oral arguments were made to the court.

## THE PARTIES' POSITIONS

The defendants argue they presented sufficient evidence to show no genuine issue of material fact existed, and they were entitled to summary judgment under the law. While there is no direct evidence because both Schuford and Jones were unable to give statements before their deaths, the defendants argue there is also no circumstantial evidence pointing to Schuford's liability. They show the unrefuted facts established Jones was responsible for cooking because Schuford was bedridden, she called 911 and reported the stove was on fire, and emergency personnel pulled Schuford from his bed upon their arrival at the house. They also note both investigators found the fire originated from the stovetop, and the plaintiffs offered no evidence to support their claims the home was unsafe, nor did they offer any evidence the gas lines and appliances were defective.

The defendants argue there is simply no evidence to support the claim Schuford was responsible for the fire, thereby shifting the burden of proof to the plaintiffs to offer evidence of the claims made in their petition to defeat summary judgment, pursuant to La. C.C.P. art. 966(D)(1). The defendants contend the plaintiffs must present some evidence showing Schuford's negligence caused the fire, and they offered absolutely nothing to that effect. Further, the defendants claim there is no presumption of negligence in a fire case, and even if a presumption did exist, the *res ipsa loquitur* doctrine does

not apply in cases such as this where the defendant produces evidence negating the inference of negligence. More simply put, the fire cannot be presumed to be the result of Schuford's negligence when the plaintiffs provided no evidence he was in any way responsible for the fire.

Finally, the defendants argue the mere fact the homeowner's policy provides liability coverage for bodily injury does not create a genuine issue of material fact. While the plaintiffs appear to view the policy as a sort of workers' compensation policy, the defendants show it provides liability coverage only for injuries for which an insured is *legally liable*. If Schuford was liable for causing the fire, then the policy should cover the plaintiffs' damages, but with no proof of liability, summary judgment is proper.

The plaintiffs contend the trial court did not commit reversible error as genuine issues of material fact exist as to the validity, applicability, and liability of the homeowner's insurance policy to Jones' injuries and eventual death as a result of the fire in Schuford's home. The plaintiffs reiterate that no negligence finding is required because, they contend, the insurance policy covered domestic employees who were injured at work regardless of whether the policyholder was actually liable for those injuries.

Regarding the cause of the fire, the plaintiffs contend the investigation and report done by Bunton conflicted with that done by Stephens, who they claim is not a qualified expert. They argue his qualifications, or lack thereof, create a genuine issue of material fact as to the reliability of his opinion. They also argue his opinion as to the cause of the fire was baseless, speculative, and unsupported by the evidence; they urge this court not to consider it in our review. Additionally, at oral argument, they suggested

8

summary judgment would be premature as additional discovery could result in evidence showing Schuford was responsible for the fire.

The defendants counter that evidence Schuford caused the fire resulting in his and Jones' deaths is absolutely required before the plaintiffs can recover under Schuford's homeowner's policy. They argue a homeowner's policy is not like workers' compensation, but rather it is a personal liability policy allowing recovery only when legal liability exists because of bodily injury or property damage caused by the insured. They re-urge all their prior arguments, adding if the plaintiffs had challenged Stephens under *Daubert*, the trial court would have been required to have a hearing and issue a ruling prior to hearing the motion for summary judgment. As no objection was made, and as Stephens' testimony and report were properly introduced in support of the motion, the defendants argue this court may consider his opinion and testimony in its consideration of the trial court's denial of their motion for summary judgment.

## DISCUSSION

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. *Id*. Appellate courts review summary judgments *de novo* under the same criteria governing the district court's consideration of whether summary judgment is appropriate. *Seaberry v. GoAuto Ins. Co.*, 56,181 (La. App. 2 Cir. 7/16/25), 417 So. 3d 1197. Summary judgment shall be rendered if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

9

If the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then the mover's burden only requires him to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id*. To avoid summary judgment, a nonmoving party who would bear the burden of proof at trial on the factual issues concerned in the motion for summary judgment needs only to introduce prima facie evidence of such facts; if the nonmoving party fails to introduce prima facie evidence, there is no genuine issue of material fact. *Brown v. LSU Health Scis. Ctr.- Shreveport*, 56,195 (La. App. 2 Cir. 4/9/25), 409 So. 3d 471.

When a motion for summary judgment is made and supported as provided by law, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided for in La. C.C.P. arts. 966 and 967, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). If the adverse party does not so respond, then summary judgment, if appropriate, shall be rendered against him. *Id*.

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented

10

by the exercise of reasonable care, and that he failed to exercise such reasonable care. La. C.C. art. 2317.1.

Further, negligence cannot be assumed or proved by what "could have" happened, by speculation, or by possibilities. *Myles v. Turner*, 24,198 (La. App. 2 Cir. 1/19/94), 632 So. 2d 384. The mere occurrence of a fire does not justify the inference of negligence because fires may occur from separate and distinct causes. *Aetna Life and Cas. Co. v. Solloway*, 25,462 (La. App. 2 Cir. 1/19/94), 630 So. 2d 1353, *writ denied*, 94-0575 (La. 4/22/94), 637 So. 2d 162. The plaintiff must still establish the defendant's negligence by a preponderance of the evidence. *Caldwell v. Texas Indus., Inc.*, 441 So. 2d 472 (La. App. 2 Cir. 1983). The plaintiff will only meet his burden where he can show sufficient circumstances wherein the inference of defendant's negligence outweighs all other reasonable explanations as to what caused the fire. *Blanchard v. Sotile*, 394 So. 2d 633 (La. App. 1 Cir. 1980), *writ denied*, 399 So. 2d 601 (La. 1981). This burden of proof requires the plaintiff to show that the fire was "most likely" caused by the defendants, or that negligence on the part of the defendant is the "most plausible" explanation. *Wells v. Morgan Gas Co.*, 26,641 (La. App. 2 Cir. 3/1/95), 651 So. 2d 951, *writ denied*, 95-0784 (La. 5/5/95), 654 So. 2d 327. This burden may be met by direct or circumstantial evidence. *Caldwell*, *supra*.

On *de novo* review, we find the defendants met their burden to show an absence of factual support for the plaintiffs' claims. As set out in their second motion for summary judgment, there is no evidence in the record even suggesting Schuford's house was not maintained properly or was unsafe for Schuford as a resident and Jones as his employee; there is no

evidence pertaining to potentially defective gas lines or appliances. The defendants established Schuford, who was found in his bed by SFD, was bedridden and unable to care for himself, and Jones, who called 911 telling the dispatcher the stove was on fire, was responsible for cooking. The defendants carried their burden to show there was no genuine issue of material fact as to the lack of factual support for the plaintiffs' claims Schuford's negligence was the cause of the fire.

As the burden then shifted, we now look to whether the plaintiffs provided sufficient evidence to show a genuine issue of material fact. While we will still consider the merits of the substantive arguments made by both parties, we must point out that typically, when a court grants a motion to continue a hearing on a motion for summary judgment, the filing deadlines are reset. *Reed v. Restorative Home Health Care, LLC*, 19-01974 (La. 2/26/20), 289 So. 3d 1028. However, that applies only in cases where the same motion is continued, reset, heard, and disposed of. In this case, the original motion for summary judgment was never disposed of. Rather than asking for the original to be reset, the defendants filed a *second* motion after the plaintiffs filed their amended petition. The second motion was a completely separate filing that also addressed the new claims made in the amended petition. As such, the regular filing deadlines set forth in La. C.C.P. art. 966(B)(2) would have governed the filing of any oppositions and, if the plaintiffs wanted an opposition considered, they would have been required to file a timely opposition to the second motion for summary judgment. As we have already determined the defendants established the lack of support for the plaintiffs' claims, when the plaintiffs filed no timely opposition and offered no evidence to support their claims a genuine issue of

12

material fact existed, the defendants' unopposed motion for summary judgment should have been granted. However, as indicated, we will still address the merits of plaintiffs' substantive arguments.

At the hearing on the second motion for summary judgment, the plaintiffs offered nothing more than their untimely opposition to the first motion, as well as arguments in support of their claims, with no evidence proving the existence of a genuine issue of material fact. They re-urge these same arguments on appeal, but it is well established that conclusory allegations, improbable inferences, and unsupported speculations will not suffice to create a genuine issue of material fact. *Robert v. Turner Specialty Servs., L.L.C.*, 50,245 (La. App. 2 Cir. 11/18/15), 182 So. 3d 1069.

The plaintiffs' suggestion summary judgment is premature because additional time is needed to prove the existence of genuine issue of material fact as to the causation of the fire is lacking in merit. This fire occurred in March 2022, the petition was filed in March 2023, the first motion for summary judgment was filed in January 2024, the second in August 2024, and the hearing did not occur until March 2025. In other words, there was more than an adequate amount of time to allow for discovery by both parties in a case with these facts. Despite having nearly three years in which to conduct discovery, beyond sending and responding to interrogatories and requests for production, the record contains no evidence the plaintiffs made any attempts to have the cause of the fire investigated or to request any testing be done on the gas lines and appliances to determine if they were faulty. Even with additional time, it is highly unlikely any reliable tests could be conducted at this time; nearly four years have passed since the fire. The plaintiffs argue the defendants never had any testing of the gas lines or

appliances conducted, but, as the burden of proof rests with the plaintiffs pursuant to La. C.C.P. art. 966(D)(1), the defendants are not responsible for providing the plaintiffs with test results to allow them to prove their claims. If any tests were desired by the plaintiffs, then it would be their responsibility to obtain them.

Turning to the plaintiffs' argument a genuine issue of material fact exists as to whether the house fire was accidental because the reports submitted by Investigators Bunton and Stephens contradict one another, this argument lacks merit. These reports simply do not contradict each other, nor do they create a genuine issue of material fact as to the cause of the fire. Bunton's report states while the exact cause of the fire was unknown, it appeared to have originated on the front right burner of the kitchen stove. Stephens' report went a bit further and included his opinion the cause of the fire was cooking grease heating to ignition temperature and catching fire, but his conclusion is not irreconcilable with Bunton's report.

As to the plaintiffs' argument Stephens' report should be disregarded because he was not accepted as an expert by the trial court, this argument lacks merit. Stephens' affidavit set out his experience and laid the foundation for his report, which was attached. Under La. C.C.P. art. 967(A), supporting and opposing affidavits are to be based on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively the affiant is competent to testify to the matters stated therein. Further, sworn or certified copies of all papers or parts thereof referred to in an affidavit are to be attached or served. Stephens' affidavit and the corresponding report were clearly submitted in accordance with these rules.

14

While there was no *Daubert* challenge to Stephens, even if we did not consider him an expert, the court is not prohibited from considering his report as opinion testimony. If a witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness, and helpful to a clear understanding of his testimony or the determination of a fact in issue. La. C.E. art. 701. Stephens' affidavit established he had nearly four decades of experience in fire investigations, and his report was limited to his own observations of the scene and the information provided to him by SFD, in accordance with La. C.E. art. 701. Consequently, this argument lacks merit and we will consider Stephens' report.

Finally, we consider the plaintiffs' claim a genuine issue of material fact exists in that Schuford's homeowner's policy might allow Jones' surviving family members to recover damages under the policy. They contend it allows a domestic employee to seek damages regardless of whether the injuries suffered were the result of Schuford's negligence or the fault of the domestic employee. This argument is lacking in merit. The liability portion of Schuford's homeowner's policy plainly states, under the Liability Coverages portion:

1. Coverage L – Personal Liability – "We" pay, up to the "limit" that applies, all sums for which an "insured" is legally liable because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies.

The policy clearly provides coverage only in such cases where an insured is *legally liable* for injuries, and the suggestion a finding of negligence is not required for an injured person to collect damages under this liability policy is baseless.

In support of their position Jones would be covered regardless of a liability finding, the plaintiffs rely on the portion of the liability policy pertaining to medical payments, which provides:

2. Coverage M – Medical Payments To Others – "We" pay the necessary medical expenses if they are incurred or medically determined within three years from the date of an accident causing "bodily injury" covered by this policy. Medical expenses means the reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, and funeral services; prosthetic devices; hearing aids; prescription drugs; and eyeglasses, including contact lenses.

This coverage does not apply to "you" or to any person who is a regular resident of "your" household, other than a "domestic employee." With respect to others, this coverage applies only to:

   a. A person on an "insured premises" with the permission of an "insured;" or

   b. A person away from an "insured premises" if the "bodily injury:"

      1) Arises out of a condition on an "insured premises" or the access ways immediately adjoining an "insured premises;"

      2) Is caused by an activity of an "insured;"

      3) Is caused by a "domestic employee" in the course of his or her employment by an "insured;" or

      4) Is caused by an animal owned by or in the care of an "insured."

While the policy does use the term "domestic employee," coverage is plainly activated only where the domestic employee's negligence caused harm or injury to a third party. In such a case, the insurer would cover the domestic employee as an insured should the injured party file suit and claim the negligence of the insured's domestic employee caused his injuries.

The defendants correctly conceded at oral argument if Schuford was liable for Jones' injuries, the policy would allow recovery for her medical

16

bills; however, they pointed out the coverage for medical payments was contained in the policy, and any recovery by the plaintiffs would require Schuford be found at fault for the fire. Ultimately, we agree the plain language of the policy does not allow for what amounts to a first-party claim by a domestic employee against the insured for any and all injuries sustained on the job, without also a finding of liability on the part of the insured.

In summary, plaintiffs argue the record contained insufficient evidence to establish the cause of the fire. However, this lack of evidence leaves their claims of an improperly maintained home, or faulty gas lines and appliances, as responsible for the death of Jones, in the realm of pure speculation. Ultimately, regardless of whether Stephens' report was allowed as opinion testimony, and regardless of what Bunton's report did or did not conclude, the unfortunate reality for the plaintiffs is the record simply does not contain evidence supporting their claims. There is no evidence within the record even tending to show the Schuford home was not properly maintained, and the plaintiffs offered no evidence of any kind to support their claims the gas lines and appliances were faulty.

We are acutely sympathetic to the pain plaintiffs have suffered as loved ones left to grieve their wife and mother's long-suffering and tragic passing, but the responsibility to provide some evidence to support their claims and establish the existence of a genuine issue of material fact rested with them. As they were unable to do so, we find the trial court's denial of the defendants' motion for summary judgment was inappropriate and unsupported by the law and evidence. For these reasons, we reverse the trial court and grant the defendants' motion for summary judgment.

**CONCLUSION**

For the foregoing reasons, we grant the writ, reverse the judgment of the district court, grant the motion for summary judgment filed by the Estate of Lawson Schuford and Teacher's Insurance Company, and dismiss with prejudice the claims of Willie James Jones, Stephanie Jones Thomas, and Cassandra Denise Jones on behalf of Rosemary Jones. Costs of this appeal are assessed to the plaintiffs, Willie James Jones, Stephanie Jones Thomas, and Cassandra Denise Jones on behalf of Rosemary Jones.

**WRIT GRANTED; JUDGMENT REVERSED, AND SUMMARY JUDGMENT GRANTED.**

**HUNTER, J., dissenting.**

Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. *Bellard v. Am. Cent. Ins. Co.*, 07-1335 (La. 4/18/08), 980 So. 2d 672**.** If an insurance policy is susceptible to two or more reasonable interpretations, then it is considered "ambiguous" and must be liberally interpreted in favor of coverage. *Reynolds v. Select Properties, Ltd.*, 634 So. 2d 1183 (La. 1994). Liability insurance policies should be interpreted to effect, rather than to deny coverage. *Hodge v. Louisiana Farm Bureau Mut. Ins. Co.*, 55,656 (La. App. 2 Cir. 6/26/24), 388 So. 3d 1290, *writ granted,* 24-00958 (La. 1/14/25), 398 So. 3d 645.

Reversal of district court's findings of fact is warranted under manifest error standard of review only when the record, viewed in its entirety, contains no reasonable factual basis for district court's finding and establishes that finding is clearly wrong; without such showing, appellate court may not reverse, even if convinced that had it been sitting as trier of fact, it would have weighed evidence differently. *Criswell v. Kelley*, 54,188 (La. App. 2 Cir. 3/9/22), 335 So. 3d 489. The issue to be resolved by a reviewing court under the manifest error-clearly wrong standard of appellate review for factual determinations is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Burks v. Hogan*, 55,699 (La. App. 2 Cir. 5/22/24), 387 So. 3d 848, *writ denied*, 24-00814 (La. 10/15/24), 394 So. 3d 814. Reversal of the trial court's findings of fact is warranted under the manifest error standard of review only when the record, viewed in its entirety, (1) contains no reasonable factual basis for the district court's finding and (2) establishes that the finding is clearly

1

wrong; without such a showing, the appellate court may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Wakefield v. Chevrolet*, 55,984 (La. App. 2 Cir. 12/18/24), 401 So. 3d 1275. The trial court's findings of fact are subject to the manifest error standard of review, and the Court of Appeal may not set these aside unless they are manifestly erroneous or plainly wrong. *Wakefield*, *supra*.

On review of factual determination for manifest error, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Bellard*, *supra*. If the factual findings are reasonable considering the record reviewed in its entirety, a reviewing court may not reverse, even if convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. *Bellard v. Am. Cent. Ins. Co.*, 07-1335 (La. 4/18/08), 980 So. 2d 672, 676 (Per Justice Weimer, with the Chief Justice and three justices concurring in part). This Court's later opinion distinguished Bellard: "District court's findings of fact are subject to manifest error standard of review; court of appeals may not set aside unless they are manifestly erroneous or plainly wrong." *Criswell*, *supra*.

A *de novo* standard of review is required when an appellate court considers ruling on summary judgment motions. The appellate court must use the same criteria that governed the trial court's determination of whether summary judgment was appropriate. *Jackson v. Minden Police Dep't*, 54,799 (La. App. 2 Cir. 11/16/22), 351 So. 3d 883, *writ denied*, 22-01844 (La. 2/14/23), 355 So. 3d 616. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and

2

admissions on file, together with the affidavits, show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.

A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery, *i.e.*, material facts are those which potentially ensure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. *Chreene v. Prince*, 52,351 (La. App. 2 Cir. 9/26/18), 256 So. 3d 505. Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is summary judgment warranted. Any doubt is to be resolved in favor of trial on the merits. *Thornhill v. Black, Sivalls, and Bryson, Inc.*, 394 So. 2d 1191 (La.1981).

The burden of proof is on the party moving for summary judgment, and the court should resolve every reasonable doubt against the mover. *Roberts v. Louisiana Coca-Cola Bottling Co.*, 566 So. 2d 163 (La. App. 4 Cir.), *writ denied*, 571 So. 2d 647 (La. 1990). The fact that evidence preponderates in favor of the party moving for summary judgment does not justify the denial of trial on the merits. *Carroll v. Newtron, Inc.*, 477 So. 2d 719 (La. App. 3 Cir.), *writ denied*, 478 So. 2d 530 (La. 1985).

Without question, several issues remain to be addressed by the lower court. The trial court identified conflicting expert opinions regarding the origin and cause of the March 11, 2022, fire, which ultimately led to the demise of both the cared-for and the caregiver. Both the Shreveport Fire Department and EFI Global placed the origin in the kitchen but were unable to determine a definitive cause. Additionally, the parties dispute whether the

3

Horace Mann Homeowners Policy provides no-fault liability coverage for the death of Rosemary Jones while she was acting as a domestic employee. One party contends coverage applies automatically based on Jones' status as a domestic employee, while another asserts coverage applies only if the homeowner is found liable. Under the policy, Jones qualifies as a domestic employee because she was hired by either the deceased or an authorized agent for the estate of his household to provide familial around-the-clock care. Furthermore, nothing in the policy excludes recovery based on the scope of her employment.

This Court has consistently upheld that summary judgment is improper where genuine issues of material fact remain or where resolution would require impermissible credibility determinations. Undergirded with a plethora of Louisiana jurisprudence, trial courts are afforded broad discretion in evidentiary rulings, including but not limited to credibility determinations and interpretations of policy and law. Those subsequent determinations should not be disturbed on appeal absent clear error or an abuse of discretion, thus reinforcing the deference given to trial courts in managing proceedings and evaluating the evidentiary record.