liPRICE, Judge Pro Tem.
Morgan Gas Co., its employee, Mark Tridi-co, and its liability insurer, Ranger Insurance Company, have appealed a jury verdict awarding damages to plaintiffs resulting from an explosion and fire at a residence in Red River Parish allegedly caused by the negligence of Morgan Gas employees.

FACTS

On November 8, 1991, Morgan Gas Co. sent two company representatives, Mark Tridico and Pat Lewis, to the house of Jennie Wells in a rural part of Red River Parish to convert her home heating system from natural gas to propane gas. In the process of making the change over, they disconnected the house from the natural gas system and capped off the old gas line. They delivered a full LP gas tank and connected it to the existing gas service lines of the house. In order to make this connection, Mark Tridico made a flare joint in the copper line running from the tank. Mark Tridico also converted the gas heaters in the house to burn propane but was unable to convert the hot water heater.
After finishing their work, the Morgan Gas crew went next door to perform the same conversion for a neighbor, Lucille Hasuett. Five to ten minutes later there was an explosion back at Jennie Wells’ house. Ms. Wells was in the house at the time of the explosion, along with her daughter, Kasandria Emmitt, and her grandson, Jenotis. All three of them were able to leave the house before any flames were sighted. Once outside, they observed heavy smoke pouring out of the roof of the house and then the fire spread and *953 eventually burned the entire house. Jenotis was not injured in the fire; Kasandria received burns on her right hand and right side; and Ms. Wells, although not physically harmed in the fire, was later diagnosed with “post traumatic stress disorder.”
I ¡¡At trial, plaintiffs sought to prove that the fire was caused by the negligence of a Morgan Gas employee in preparing a faulty connection which allowed gas to escape underneath the residence and to somehow be pulled into the house and attic. Defendants sought to show the fire was caused by one of the occupants attempting to light the hot water heater after being advised that it could not be converted to LP gas.
The trial court jury found defendants to be 100% liable and awarded plaintiff, Jennie Wells, $51,868 for the loss of her home, $20,-000 for the loss of the contents of her home, $2,000 for increased living expenses and $50,-000 for mental anguish. Ms. Wells’ daughter, Kasandria Emmitt, was awarded $3,000 for burns suffered on her right hand and side.
After the perfection of this appeal in these consolidated cases, motions to dismiss have been filed showing settlement of Kasandria’s claim in full and a portion of Jennie Wells’ claim for damages. The issues which were not dismissed relating to Jennie Wells are: (1) liability of defendants and (2) the $50,000 award for mental anguish. The motion to dismiss in docket number 26,642-CA, Kasandria Emmitt, Et AL. v. Morgan Gas Company, Inc., Et Al is granted.

LIABILITY

Defendant contends the jury verdict is in error because the plaintiff failed to present sufficient evidence to satisfy the burden of proof required to prove negligence in cases involving fire. In Morales v. Houston Fire and Casualty Co., Inc., 342 So.2d 1248 and 1250, writ denied, 345 So.2d 49 (1977), the fourth circuit stated:
Although the circumstances surrounding the occurrence of a fire may give rise to an inference that a particular defendant was negligent, that negligence is not presumed from the mere happening of the fire because there can be many causes of fires. The determination of preponderance depends on whether the evidence taken as a whole shows that the particular defendant’s negligence was the most plausible or likely cause of the fire.
, , » JjThe burden of proof set out m Morales requires the plaintiff to show that the fire was “most likely” caused by the defendant, or that negligence on the part of defendant is the “most plausible” explanation.
Other courts have used similar language to set out a plaintiffs burden of proof in eases involving fire. The first circuit addressed this issue in Blanchard v. Sotile, 394 So.2d 633 (1st Cir.1980) and set forth a burden of proof much like that given in Morales. The Blanchard court noted:
The general rule is that negligence is not presumed and the burden of proving negligence by a preponderance of the evidence rests on the party alleging it. The proof of negligence may be by direct or circumstantial evidence; however, a party relying upon circumstantial evidence has more in his burden of proof only if the evidence taken as a whole shows that the defendant’s fault was the most plausible cause of the fire and no other factor can reasonably be ascribed as the cause. The probability of the fire having been caused by the defendant’s fault must preponderate over the probability of causation from any other factor, (citations omitted)
Defendant claims the evidence was insufficient to satisfy the burden of proof set out in Morales and Blanchard, and asks this court to reverse the district court’s finding of liability. The evidence presented at trial was sufficient to convince the jury that the Morgan Gas employees’ negligence caused the explosion and fire, therefore, in order for this court to reverse this finding, we must find the jury committed manifest error or was clearly wrong. Stobart v. State through DOTD, 617 So.2d 880 (La.1993).
In the instant case, there was much expert testimony describing how each expert thought the fire might have started. Although we cannot definitively say which version is correct, this is not necessary. We must only review the case to determine *954 whether or not the jury’s findings were reasonable. Vernon Wade, a forensic engineer who obtained his degree in mechanical engineering from the University of Houston in 1976, testified on behalf of plaintiff as an expert witness. J^Mr. Wade estimated that he has investigated between 100 and 150 fire scenes over the years and has been qualified in court before as an expert forensic engineer. At the request of the insurer of the house, Mr. Wade investigated the fire site and concluded that gas had escaped through a faulty “flare fitting,” made by Mark Tridieo underneath the house, which was constructed on joists resting on piers. Once gas leaked from around the flare fitting, various drafts caused it to drift throughout the entire house, to migrate upwards into the attic, and eventually, to ignite, either by coming in contact with an open flame, such as in the heaters, or being exposed to another igniting agent.
Gary Brooks was also engaged by the insurer of the Wells residence to investigate the scene of the fire. Mr. Brooks works with the INS Investigation Bureau where he primarily investigates fire/explosion cases. He has been with the INS Investigation Bureau since 1990 but has been working as a fire investigator since the early 1980s. Mr. Brooks testified for plaintiff and concluded that the origin of the fire was in the same area as the faulty fitting discovered by Mr. Wade.
Defendant’s relied upon the testimony of Gene McDowell of Owen’s Engineering Inc. of Houston. Mr. McDowell specializes in fire/explosion investigations and within this speciality further specializes in explosions caused by fuel gases such as LP and natural gas. Mr. McDowell inspected the premises 30 days after the fire and testified he could not determine the origin of the fire, but that in his opinion, the fire was started when someone attempted to light the hot water heater. Although there is some evidence to this effect, primarily consisting of a small paper fire discovered in the area of the hot water heater, Mr. Wade, who investigated the site 10 days after the fire, examined the remains of the hot water heater and found the main valve to be in the off position, indicating no one had in Rfact tried to light the hot water heater. His testimony as to the valve being closed was confirmed by the testimony of Gary Brooks.
After hearing this conflicting testimony of expert witnesses on the cause of the fire, the jury accepted the conclusions of plaintiffs experts, Wade and Brooks, as being more convincing. Just as questions of credibility are for the trier of fact so is the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Ins. Co., 563 So.2d 850, 853 (La.1990). We do not find that the expert testimony the jury relied on in the case at bar was patently unsound.
We conclude that the jury’s findings were reasonable and based on sufficient evidence, therefore we affirm the decision of the district court on the issue of liability.

DAMAGES

Defendant contends that $50,000 for Ms. Wells’ mental anguish is excessive and asks this court to review this award.
The jurisprudence has allowed recovery of damages for mental anguish as a result of property damage when the damage occurs at a time in which the owner thereof is present or situated nearby and the owner experiences trauma. Mayer v. McNair Transport, Inc., et al., 384 So.2d 525 (La.App. 2d Cir. 1980); Kolder v. State Farm Ins. Co., 520 So.2d 960 (La.App. 3rd Cir.1987). Since the question of whether an owner experiences trauma is a factual determination, the manifest error rule applies to the fact finder’s review of the issue. Kolder, supra.
In the instant case, Ms. Wells was in the kitchen at the time of the explosion, along with Kasandria and Jenotis, who was nearby playing with his blocks. After the explosion, Ms. Wells saw Kasandria and Jenotis hit the floor as she ran out ofjjthe house for help. After Kasandria and Jenotis made it out of the house, all they could do as the flames grew was watch, as the fire completely destroyed the house. Everything was lost in the fire, including family pictures, clothes and most all of the furniture. The only items saved were two chairs, a couch and one load *955 of laundry Kasandria had put in the washing machine.
Ms. Wells was examined by Dr. Paul Ware, a psychiatrist and neurologist, approximately three weeks after the fire. Dr. Ware diagnosed plaintiff as suffering from “post traumatic stress disorder,”[1] and testified that as a result of the fire, Ms. Wells had difficulty falling asleep, suffered from interruptions in her sleep patterns, was depressed, had uncontrollable crying spells and demonstrated what is called “startle response,” which means that she would become frightened whenever she saw a fire or a gas heater. She saw Dr. Ware periodically and was still receiving treatment from him as of the date of this trial. Ms. Wells was prescribed antidepressants and medication to help her fall asleep. Although Ms. Wells has admittedly made substantial progress, she claims she has changed as a result of the accident.
In support of her contention that the sum of $50,000 is not excessive for the mental damage she suffered, plaintiff has cited several cases in which awards in this approximate range were upheld. Swan v. Vernon Mill, 517 So.2d 1161 (La.App. 3rd Cir.1987); Gitschlag v. U.S. Home Corp., 506 So.2d 1236 (La.App. 1st Cir.1987); and Burton v. Berthelot, 567 So.2d 649 (La.App. 4th Cir.1990). None ofjjthese cases have any similarity to the instant case. Neither do we find the cases relied upon in defendant’s brief to be sufficiently analogous to be of assistance.
We believe the case of Mayer v. McNair Transport, Inc., supra, to be most analogous to the instant situation. There the fire broke out when a large transport vehicle overturned and spilled its flammable gas contents. The plaintiffs’ house was immediately engulfed in flames and they ran out of the kitchen where they had been preparing breakfast. Once outside they were forced to watch their house burn. We recognize that the facts of Mayer are not identical to the present case, but in both situations the plaintiffs condition was the result of being forced to flee from their homes and having to stare hopelessly as their houses burned to the ground. This court, in Mayer, upheld an award of $18,500.00 in damages to the plaintiff -wife for her mental anguish, which included nine months of severe hyperventilation attacks, the first of which being so frightening to her and her family that she had to be hospitalized, fearing that she had suffered a heart attack.
Although we think the evidence is clear that Ms. Wells has suffered a substantial degree of mental anguish, it was not as severe as that suffered by the plaintiff in Mayer, supra, in which this court upheld a jury verdict awarding the sum of $18,500.00 in 1980. Taking into consideration that fifteen years have elapsed since the Mayer case, we find the maximum the jury could have awarded Ms. Wells was $25,000.00 and the judgment should be reduced to this amount.
For the foregoing reasons the judgment appealed is amended to reduce the amount awarded Jennie Wells from $50,000 to $25,-000 and as amended is affirmed. Costs of this appeal are to be prorated equally between appellants and appellee.
AMENDED AND AFFIRMED.

. Post traumatic stress disorder is a condition whereby one who has experienced a traumatic experience continues to react and have symptoms to the prior traumatic incident, in a way like it was still occurring. Rather than letting the experience go, one suffering from post traumatic stress disorder reacts as if the experience were still happening. (Taken from the testimony of Dr. Paul Ware — Trans, pg. 223)