REVISED October 24, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 24, 2008

Charles R. Fulbruge III
Clerk

No. 07-30113

LEROY JOHNSON

Plaintiff - Appellee

v.

CENAC TOWING INC.

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-914

Before JONES, Chief Judge, and GARWOOD and JOLLY, Circuit Judges.

EDITH H. JONES, Chief Judge:

Leroy Johnson ("Johnson") sustained injuries while working as a seaman for Cenac Towing, Inc. ("Cenac"). He sued Cenac in federal court for negligence under the Jones Act, unseaworthiness, and maintenance and cure benefits. Following a bench trial, the district court denied maintenance and cure because Johnson willfully concealed his preexisting physical problems from Cenac, but the court awarded him damages under the Jones Act. Cenac appeals. We must vacate and remand for further consideration of Johnson's possible contributory negligence, but otherwise affirm the court's rulings.

BACKGROUND

Johnson worked as a tankerman for Cenac from May 2003 to May 2004 and from May 2005 to December 2005. Before each period of employment with Cenac, he filled out an employment application and underwent a pre-employment physical examination. On both his 2003 and 2005 applications, he indicated that he had never suffered any on-the-job injuries and that he did not have any physical conditions which might interfere with or hinder his job performance. For Cenac's pre-employment physicals, Johnson completed medical history questionnaires in which he indicated that he had never hurt his back and never received disability compensation. He did acknowledge that he had undergone surgery, but only for a shoulder injury in 1987.

Johnson's answers on his applications and questionnaires were not truthful. Before he applied to work for Cenac, he had been twice injured while working for other offshore companies. In 1994, Johnson injured his neck and back in an on-the-job accident, which left him disabled for at least ten months. He underwent neck surgery almost a year later as a result of the accident. In 2001, Johnson injured his back again in an on-the-job accident and was disabled for about thirteen months. He received steroid injections to treat his back injury and experienced other ongoing urological problems as a result of the accident. After each accident, Johnson obtained compensation benefits, sued his employer, and collected damages. He intentionally concealed all of these prior accidents, injuries, and claims from Cenac during the hiring process. The doctor who administered Johnson's two physical examinations on behalf of Cenac stated that had he known of Johnson's prior work-related accidents he would not have approved him for employment because of the "possibility of further endangering

2

himself in any kind of way . . . in this case his neck and his back and to try to protect others around him."

On December 14, 2005, Johnson injured his back again while working as a tankerman aboard a Cenac vessel that was towing barges near Mobile, Alabama. Johnson and coworker Louis Celestine were carrying a 175-pound cross-over hose aboard one of the barges when Celestine tripped and dropped his part of the load. Suddenly bearing a heavier weight, Johnson exclaimed that he had hurt his back. He immediately reported the accident and his injury to the crew.

For several months, Johnson was treated for low back pain and urological problems. The district court found that these injuries resulted from an aggravation of Johnson's pre-existing back condition stemming from his 2001 accident. Johnson incurred $38,095.80 in medical expenses. Some of the expenses inexplicably were paid by the Blue Cross Blue Shield group health insurance plan that Cenac offers to cover only employees' non-work-related injuries.[1] Cenac pays one hundred percent of its employees' insurance premiums for the plan.

Johnson filed suit against Cenac for negligence under the Jones Act, 46 U.S.C. § 30104, unseaworthiness under general maritime law, and maintenance and cure. Cenac countered that Johnson was not entitled to

---

[1] It is unclear whether Blue Cross paid these expenses because Johnson falsely told his health care providers that his injuries were non-work-related or whether Blue Cross erroneously assumed that its policy covered Johnson's injuries. The district court made no factual findings on this issue. On appeal, Cenac argues that Johnson lied to his health care providers, but it provides no citations to the record to support this claim. Our independent review of the record indicates that Cenac offered no evidence indicating that Johnson lied to his health care providers about the nature of his injuries. He may have done so, but we cannot assume that he lied simply because Blue Cross paid his medical bills for work-related injuries.

recover either damages or maintenance and cure because he willfully concealed his prior injuries during Cenac's hiring process. At a minimum, it asserted, any damages awarded to Johnson should be reduced because the concealment rendered him contributorily negligent. Cenac also argued that if Johnson were awarded damages for past medical expenses, the company should receive a set-off for the health insurance payments made by the Blue Cross plan, which it established and fully funded.

After a two day bench trial, the district court denied maintenance and cure; awarded judgment as a matter of law for Cenac on unseaworthiness; found Cenac entirely at fault for Johnson's injuries; awarded Johnson $130,226 in Jones Act damages, including all past medical expenses; and ruled that payments made by Blue Cross were a collateral source not subject to set-off against Johnson's award. On appeal, Cenac argues that the district court erred in (1) holding that Johnson's intentional concealment of material medical facts did not bar his Jones Act negligence claim; (2) finding that Johnson was not contributorily negligent for concealing his prior injuries; and (3) denying its request to deduct health insurance payments Johnson received from his damage award for past medical expenses.

## DISCUSSION

### A. McCorpen Defense and the Jones Act

Generally, an employer "must pay maintenance and cure to any seaman who becomes ill or suffers an injury while in the service of the vessel, regardless of whether either party was negligent." Bertram v. Freeport McMoran, Inc., 35 F.3d 1008, 1012 (5th Cir. 1994) (internal quotation marks omitted). An employer, however, is allowed to rely on certain legal defenses to deny a claim for maintenance and cure. Brown v. Parker Drilling Offshore Corp., 410 F.3d

4

166, 171 (5th Cir. 2005) (citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547 (5th Cir. 1968)). Among these, the McCorpen defense applies when an injured seaman has "willfully concealed from his employer a preexisting medical condition." Id. To establish a McCorpen defense, an employer must show that the seaman intentionally misrepresented or concealed medical facts; the non-disclosed facts were material to the employer's decision to hire the seaman; and a connection exists between the withheld information and the injury complained of in the lawsuit. Id.

In this case, the district court found that all three elements of the McCorpen defense were satisfied and accordingly denied recovery for maintenance and cure. Cenac argued that its McCorpen defense should also bar Johnson's claim under the Jones Act, which holds an employer liable to a seamen for injuries "resulting in whole or in part from the negligence" of the employer or its employees or agents. 45 U.S.C. § 51; Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997) (en banc).[2] But the district court disagreed, stating that "the existence of the McCorpen defense does not automatically taint a Jones Act claim."

Cenac continues to urge that the McCorpen defense should extend to "any damages sought by a seaman for only the aggravation of his prior and intentionally concealed medical condition." This legal argument, which we review de novo on appeal, is foreclosed by precedent. The Supreme Court's decision in Still v. Norfolk & Western Railway Co., 368 U.S. 35, 82 S. Ct. 148

---

[2] The Jones Act, 46 U.S.C. § 30104, makes the provisions of the Federal Employers' Liability Act ("FELA"), such as 45 U.S.C. § 51, applicable to seamen. Gautreaux, 107 F.3d at 335. Jones Act cases, therefore, follow cases under FELA. Brown, 410 F.3d at 178.

(1961), makes clear that a "seaman . . . is not barred from suit under the Jones Act because he conceals a material fact in applying for employment." Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 530 (9th Cir. 1962); Still, 368 U.S. at 35, 82 S. Ct. at 149 (holding that a railroad cannot "escape" liability under FELA "by proving that an [injured] employee . . . has obtained his job by making false representations upon which the railroad rightfully relied in hiring him").[3] The district court correctly concluded that McCorpen does not bar a Jones Act claim.

## B. Contributory Negligence and the Jones Act

Although the McCorpen rule is not applicable to a Jones Act negligence claim, contributory negligence is an affirmative defense that diminishes recovery in proportion to the seaman's fault. 45 U.S.C. § 53; see Norfolk Southern Ry. Co. v. Sorrell, 549 U.S. 158, 127 S. Ct. 799, 802 (2007). To establish that a seaman is contributorily negligent, an employer must prove negligence and causation. See Sorrell, 127 S. Ct. at 807; see also Gautreaux, 107 F.3d at 338.

A seaman is negligent if he fails to act with ordinary prudence under the circumstances. See Gautreaux, 107 F.3d at 339. "The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education. The reasonable person standard, therefore, [in] a Jones Act negligence action becomes one of the reasonable seaman in like circumstances." Id. (emphasis in original). The standard of causation in Jones Act cases is not demanding.[4] See,

---

[3] See also Jauch v. Nautical Service, Inc., 470 F.3d 207, 213-14 (5th Cir. 2006); Brown, 410 F.3d at 178; Compton v. Luckenbach Overseas Corp., 425 F.2d 1130, 1133 (2d Cir. 1970).

[4] In Sorrell, Justice Souter, joined by Justices Scalia and Alito, argues in a concurring opinion that the standard of causation in FELA cases, and thus Jones Act cases, is not more "relaxed" than in tort litigation generally. Sorrell, 127 S. Ct. at 809-12 (Souter, J., concurring).

e.g., Gautreaux, 107 F.3d at 335 ("[T]he Supreme Court [has] used the term 'slightest' to describe the reduced standard of causation between the employer's negligence and the employee's injury in FELA § 51 cases."). To establish causation, an employer must show that a seaman's negligence "played any part, even the slightest, in producing the injury." Chisolm v. Sabine Towing & Transp. Co., Inc., 679 F.2d 60, 62 (5th Cir. 1982) (citing Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S. Ct. 443, 448 (1957)). See also Sorrell, 127 S. Ct. at 802 (holding that the same causation standard applies to employer negligence and employee contributory negligence in FELA cases). Even under the Jones Act, however, a party must establish more than mere "but for" causation. See Gavagan v. United States, 955 F.2d 1016, 1019-20 (5th Cir. 1992) ("The negligence must be a 'legal cause' of the injury.").

The district court held that Johnson was not contributorily negligent for willfully concealing his previous injuries during Cenac's employment application process. The court cited Brown v. Parker Drilling Offshore Corp., supra, as the Fifth Circuit's confirmation "that the existence of the McCorpen defense does not automatically taint a Jones Act claim." The court then rejected Cenac's "argument that if not for Johnson's misrepresentations, this accident would not have happened." It found that the "condition of Johnson's back and neck did not contribute to causing the accident," and the fact that Johnson sustained on-the-

---

He contends that this "relaxed" causation standard stems from a misunderstanding of Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S. Ct. 443, 448 (1957). Id. at 809. To correct that misunderstanding, Justice Souter provides a detailed analysis of Rogers and related cases showing that it was not intended "to water down the common law requirement of proximate cause" in FELA cases. Id. at 811.

job injuries three years before his December 2005 accident did not make him contributorily negligent.

In a bench tried admiralty case, a district court's findings concerning negligence and causation are findings of fact reviewable by this court only for clear error. See Gavagan, 955 F.2d at 1019. We entertain a strong presumption that the court's findings must be sustained even though this court might have weighed the evidence differently. This said, the court's decision on contributory negligence, which is fully paraphrased above, is hard to square with its recitation of facts elsewhere in the opinion. The district court found that Johnson's low-back pain caused by the 2005 accident was "an aggravation of a pre-existing back condition stemming from his 2001 maritime accident." Both injuries, as the court noted, affected his L5-S1 intervertebral disc. Going further, in its discussion of the McCorpen defense, the court found a clear connection, a "causal link," between Johnson's preemployment misrepresentations to Cenac and his current injury.

It is likely true, as the court found, that Johnson's weakened back did not cause Celestine to drop the 175-pound hose they were both carrying. But it also seems likely that Johnson would never have been employed by Cenac had he revealed the previous injuries, and having misrepresented himself onto the payroll, he set himself up for the sort of aggravating injury found by the district court. Both this court and the Supreme Court have previously considered the contributory negligence ramifications of preemployment deception. In Still, the Supreme Court reversed and remanded for trial after rejecting the proposition that a concealed preemployment physical defect bars FELA relief as a matter of law. Still, 368 U.S. at 46, 82 S. Ct. at 154-55. Nevertheless, the Court noted the

relevance, in appropriate circumstances, of such a pre-existing condition to ascertaining

> whether the injury complained of was caused by the railroad's negligence ‹in whole or in part' by tending to show either that the worker was not injured by the railroad at all, if injured, the railroad was not responsible for the full extent of the injury, or that damages should be diminished by the jury for contributory negligence.

Still, 368 U.S. at 46 n.14, 82 S. Ct. at 154 n.14. Similarly, in Savoie v. Otto Candies, Inc., 692 F.2d 363, 372 (5th Cir. 1982), this court upheld a finding of contributory negligence on the part of a seaman who

> knowingly exposes himself to conditions of employment while aware of an illness or disability which makes those conditions unsafe to him, or where a seaman has the possibility of securing relief from unsafe conditions by informing his superiors of them, but continues to work without doing so . . . .

See also Gavagan v. United States, 955 F.2d 1016 (5th Cir. 1992) (upholding one hundred percent contributory negligence of seaman who concealed from his prospective maritime employer the limited use of his hand due to surgery and proceeded to re-injure it while trying to open a valve on a tanker).

From these cases, it appears that contributory negligence may be found where a seaman has concealed material information about a pre-existing injury or physical condition from his employer; exposes his body to a risk of reinjury or aggravation of the condition; and then suffers reinjury or aggravation injury. In this case, we are unsure whether the court fully analyzed the potential for contributory negligence, because of the tension between its findings of (a) no causal connection between Johnson's employment misrepresentations and the accident, and (b) the "causal link" between the misrepresentations and Johnson's injury. Moreover, at another point in its opinion, the court observes that

9

Johnson performed heavy labor for over a year for Cenac without suffering an injury. This fact may ameliorate the tension, although it seems somewhat inconsistent with the "causal link" finding. We do not instruct how the court should ultimately rule on whether Cenac has proved Johnson's causative contributory negligence in deliberately exposing himself to heavy labor with a weakened back, but we must remand for the court to reevaluate its findings on this issue.

## C. The Collateral Source Rule

The collateral source rule bars a tortfeasor from reducing the damages it owes to a plaintiff "by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor." Davis v. Odeco, Inc., 18 F.3d 1237, 1243 (5th Cir. 1994); Phillips v. Western Co. of North America, 953 F.2d 923, 929 (5th Cir. 1992) ("[T]he collateral source rule . . . generally denies to a tortfeasor a reduction in its liability by any amounts the plaintiff receives from a source collateral to, or independent of, the tortfeasor.").[5]

---

[5] The Jones Act, as mentioned, adopted by reference certain sections of FELA. At least one of our sister circuits has stated that the sections adopted include 45 U.S.C. § 55, which provides an employer-tortfeasor a set-off from an employee's damage award for "any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee." See Blake v. Delaware & Hudson Rwy. Co., 484 F.2d 204, 205 (2d Cir. 1973). Specifically, § 55 states:

> Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

The Jones Act cases from this circuit that address the application of the collateral

The district court ruled that because the Blue Cross health insurance plan was a collateral source, its benefits could not be deducted from his damage award. Cenac argues that the district court erred. We review de novo the district court's conclusion that the Blue Cross payments are a collateral source. Davis, 18 F.3d at 1245.

One purpose of the collateral source rule is to ensure that tortfeasors bear the costs of their own conduct. See Davis, 18 F.3d at 1244 n.21. Properly understood, however, the "rule also prevents tortfeasors from paying twice for the same injury—a result that would achieve both overdeterrence and overcompensation." Id. Another purpose of the collateral source rule is to protect plaintiffs who have the "foresight to obtain insurance." Phillips, 953 at 930. See also Davis, 18 F.3d at 1244 n.21. "If tortfeasors could set off compensation available to plaintiffs through collateral sources, then plaintiffs who pay their own insurance premiums would suffer a net loss because they would derive no benefit from any premiums paid." Davis, 18 F.3d at 1244 n.21. "Additionally, such plaintiffs might be left exposed to other misfortunes once their insurance coverage was depleted by the tortfeasors' negligence." Davis, 18 F.3d at 1244 n.21 (citing Phillips, 953 F.2d at 930).

In most cases, identifying whether a source of compensation is independent of a tortfeasor is "not a difficult task." Phillips, 953 F.2d at 929. For example, insurance policies and other forms of protection purchased by a

---

source rule to employer funded benefit plans, such as Davis and Phillips, do not mention § 55. Nonetheless, the approach these cases use to determine whether the collateral source rule applies appears consistent with the approach used in similar FELA cases from other circuits that do reference and discuss § 55. See Clark v. Burlington, 727 F.2d 448, (8th Cir. 1984); Blake, 484 F.2d at 206-07.

plaintiff cannot reduce a damage award, because the tortfeasor has no connection with these types of benefits. Id. at 930-31. But when an employer –tortfeasor funds a benefit plan, like the group health insurance plan at issue here, "the justifications for denying a setoff become less compelling." Id. at 931.

Generally, however, when an employee has bargained for a fringe benefit like health or life insurance as additional consideration for employment, "compensation received by the employee under that fringe benefit should not be deducted from damages awarded to the employee as a result of the employer's negligence." Davis, 18 F.3d at 1244. Since the employee is "already contractually entitled to that benefit, allowing the employer to deduct such compensation would both undercompensate the employee and provide the employer with an undeserved windfall." Id. To evaluate whether a benefit derives from a collateral source, we "ordinarily assess" whether that benefit is in the nature of a fringe benefit or deferred compensation or instead reflects a tortfeasor's effort to indemnify itself against potential legal liability. See Davis, 18 F.3d at 1244; Phillips, 953 F.2d at 932.

Phillips listed some factors that may assist courts in distinguishing between fringe benefits and benefits intended to respond to legal liability. Those factors are (1) whether the employee contributes to the benefit plan; (2) whether the benefit plan stems from a collective bargaining agreement; (3) whether the plan covers both work-related and non-work-related injuries; (4) whether payments under the plan correlate with the employee's length of service; and (5) whether the plan contains specific language requiring benefits received under the plan to be set-off against a judgment adverse to the tortfeasor. Phillips, 953 F.2d at 932 (citing Allen v. Exxon Shipping Co., 639 F. Supp. 1545, 1548 (D.

Me. 1986)). In addition to finding these factors relevant, we have stated that the ultimate "inquiry remains whether the tortfeasor established the plan as a prophylactic measure against liability." Davis, 18 F.3d at 1245.

The Phillips factors seem to point toward a finding that the Blue Cross payments were not a collateral source. Johnson did not bargain with Cenac for a fringe benefit that covered work-related injuries. Instead, Cenac established and fully funded the Blue Cross health insurance plan to cover only non-work-related injuries. The plan did not arise from a collective bargaining agreement, and it was not related to an employee's length of service. Thus, Johnson was not "contractually entitled" to the payments that Blue Cross made to cover the medical expenses arising from his injury. In this case, allowing Cenac to deduct such medical payments from his recovery would neither undercompensate Johnson nor provide Cenac with an undeserved windfall. To the contrary, providing Cenac a set-off would achieve one of the purposes of the collateral source rule: preventing a tortfeasor from paying twice for the same injury.

Davis, however, constrains us to hold that the Blue Cross payments were from a collateral source. There, a seaman sued his employer under the Jones Act for exposing him to chemicals that allegedly caused him to develop an extremely rare disease. Davis, 18 F.3d at 1240. Before filing suit, the seaman received medical and disability benefits from a group insurance plan that was established and largely funded by his employer to compensate employees only for non-work-related injuries and illnesses. Id. While recognizing that the case presented a close question, and that several Phillips factors weighed against collateral source status, this court concluded that the plan's "exclusive application to nonwork-related injuries [was] strong evidence that [the employer]

13

did not establish the [p]lan to reduce its own legal liability." Davis, 18 F.3d at 1245 (emphasis in original). The opinion noted that because the defendant "would not ordinarily be liable for nonwork-related injuries of its employees," the plan applied only under circumstances in which it was "unlikely to be found liable for the injuries or illnesses of its employees." Id. Thus, the plan ". . . [was] closely akin to a fringe benefit — part-and-parcel of its employees' compensation package." Id.

The court acknowledged that including medical expenses as part of the damage award after the employer had already paid Davis's insurance premiums appeared to constitute double payment in "contravention of a fundamental policy underlying the collateral source rule." Davis, 18 F.3d at 1245 n.31. Nevertheless, "refusing to deduct benefit payments from the plaintiff-employee's damage award does not make the employer pay twice—any more than refusing to set off [the] employee's salary would make the employer pay twice." Id. This explanation, unfortunately, ignores that Davis was not entitled to receive any benefits from the particular plan for work-related injuries. While offering no direct solace to the employer, the court opined that ultimately the seaman might not be paid twice for his injury: The insurance company might, as a subroger, have the right to recover from Davis the benefits it erroneously paid. Id.

Under Davis, the plan's exclusive coverage of non-work related injuries is the dispositive factor in determining that the plan is a collateral source. Even though Johnson was not contractually entitled to the benefits he received from Blue Cross, and Cenac entirely paid his premiums for the plan, we are required

to affirm the district court's ruling that the Blue Cross payments are a collateral source that cannot be set off against Johnson's damage award.[6]

Under the terms of the Blue Cross plan, however, if Blue Cross extends benefits for a work-related injury and the employee's "injury or illness is found to be compensable under law," then Johnson or Cenac (as the tortfeasor) "must reimburse" Blue Cross for the benefits extended. Additionally, the plan entitles Blue Cross to recover any payment made in error to an employee for non-covered services. If Blue Cross were to seek reimbursement from Cenac for the benefits extended to Johnson, Cenac would be placed in the position of paying three times for Johnson's injury. That result certainly cannot be justified under the collateral source rule. In such an event, Johnson must hold Cenac harmless for reimbursement demanded by Blue Cross against Cenac.

## CONCLUSION

For the reasons stated, the judgment of the district court is VACATED and REMANDED with instructions.

---

[6] This result is hard to square with this court's stated emphasis, e.g. in Phillips and Davis, on considering whether a tortfeasor established a benefit plan in an effort to indemnify itself against potential legal liability. For instance, if Cenac had established a health insurance plan that covered both work-related and non-work-related injuries and contained specific language requiring that benefits received under the plan be set-off against a judgment adverse to the tortfeasor, then a court might find that the plan was intended to indemnify the tortfeasor from liability. See e.g., Allen, 639 F. Supp. at 1549. Here, however, Cenac in effect attempted to "indemnify" itself against double liability by purchasing coverage limited to non-work-related injuries so that an employee would not be able to recover from it both plan benefits and work related tort damages. Even though both Cenac's plan and the hypothetical plan described above were established in an effort to avoid double liability, the former is considered a collateral source, but the latter is not. These conflicting results make little sense.