# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 23, 2009

Charles R. Fulbruge III
Clerk

No. 08-30031

In Re: In the Matter of PARKER DRILLING OFFSHORE USA LLC, as Owner and Operator of Parker Rig 14-J, Praying for Exoneration From and/or Limitation of Liability for the incident of September 11, 2003, at Chandeleur Area Block 27

------------------------

PARKER DRILLING OFFSHORE USA LLC

Third Party Plaintiff - Appellant-Cross-Appellee

v.

LONNIE CORTNEY CAMPBELL

Claimant - Appellee-Cross-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before BARKSDALE, DENNIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Claimant Lonnie Cortney Campbell ("Campbell") worked as a hammer's helper on the appellant Parker Drilling ("Parker")'s rig on September 11, 2003. On that date, he was transported to the rig and told to take a nap and wait to be

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

called to work. Campbell retired to an eight man sleeper on the heliport and went to bed around noon. At around 3:00 to 3:30 p.m., due to Parker's improper maintenance, one of the rig's legs collapsed causing the rig to suddenly list. Campbell fell out of the top bunk and landed on top of another employee. Campbell's head and upper body hit the floor and his lower body fell into the side of the bottom bunk. Campbell initially thought that the sleeper had fallen off the rig entirely. He immediately got up from the floor and went to the locker to retrieve pictures of his wife and children. Campbell testified that he took his wallet and put it in his underwear for identification purposes. He then put on a life jacket and attempted to exit the rig. Upon exiting the sleeper, he saw nothing but smoke. Clad only in his underwear, Campbell began running until he found stairs; he helped other workers along the way. Campbell testified that he had believed that he would lose his life at that time. He feared that the rig would go completely over, because he observed part of the rig's deck was already in the water and that the crane appeared close to falling into the water. Campbell finally reached the water and swam away; he was able to swim to a rescue boat and was pulled to safety.

On September 17, 2003, Parker filed an admiralty suit for exoneration and/or limitation of liability for the incident as authorized under 46 U.S.C. § 30501, *et seq.* Campbell filed a suit against Parker, claiming damages to his neck, lower back, wrist as well as significant post-traumatic stress disorder ("PTSD"). Parker stipulated to liability. The trial court awarded Campbell the following:

> 1. Past physical pain and suffering for cervical and carpal tunnel injuries - $300,000.00;
> 2. Past mental pain and suffering for post traumatic stress disorder - $150,000.00;
> 3. Past physical pain and suffering for lumbar injuries - $100,000.00

Pre-judgment interest on said sums shall accrue at the rate of 6% per annum, simple interest, from date of loss.

4. Present and future physical pain and suffering for cervical and carpal tunnel injuries - $100,000.00;
5. Present and future mental pain and suffering for post traumatic stress disorder - $50,000.00;
6. Present and future pain and suffering for lumbar injuries - $100,000.00;
7. Future lost wages - $84,000.00; and
8. Future medical treatment - $68,066.00

Interest on present and future damages as set forth above shall be calculated pursuant to 28 U.S.C. §1961.

Parker timely appealed the judgment. Campbell cross-appeals.

## STANDARD OF REVIEW

"A district court's damages award is a finding of fact, which this court reviews for excessiveness using the clear error standard." *Lebron v. United States*, 279 F.3d 321, 325 (5th Cir. 2002). On appeal from a judgment after a bench trial, we review findings of fact for clear error and conclusions of law *de novo. Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 359 F.3d 777, 779 (5th Cir. 2004). "We review the district court's award of prejudgment interest for an abuse of discretion." *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines,* 278 F.3d 494, 499 (5th Cir. 2002).

## ANALYSIS

### A. Parker's Contentions

### I. The Maximum Recovery Rule Does Not Apply

Parker contends that the total award of $200,000 for PTSD must be remitted by operation of the maximum recovery rule. Putting aside the criticisms that might be levied against an application of the maximum recovery rule, *see Foradori v. Harris*, 523 F.3d 477, 505-06 n.21-23 (5th Cir. 2008), Parker's

argument is unavailing because it is inconsistent with the very language of the maximum recovery rule that it relies upon.

We have held that "[w]e do not reverse a jury verdict for excessiveness except on the strongest of showings, but when a jury's award exceeds the bounds of reasonable recovery, we must suggest a remittitur ourselves or direct the district court to do so." *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 590 (5th Cir. 1985). "[W]e apply the loosely defined 'maximum recovery rule' when deciding whether a remittitur is in order. This judge-made rule essentially provides that we will decline to reduce damages where the amount awarded is not disproportionate to at least *one factually similar case* from the relevant jurisdiction." *Douglass v. Delta Air Lines, Inc.*, 897 F.2d 1336, 1344 (5th Cir. 1990). We look at the "rough guidance provided by awards approved for similar injuries by the Louisiana appellate courts and the decisions of this court applying Louisiana law." *Moore v. M/V ANGELA*, 353 F.3d 376, 385 (5th Cir. 2003) (applying Louisiana law to determine damages in accident involving a longshoreman on a vessel).

In this case, Campbell's injuries and damage award are similar to those in *Nielsen v. Northbank Towing, Inc.,* 768 So.2d 145, 157-61 (La. App. 1st Cir. 2000)*,* a factually similar case from the relevant jurisdiction. Campbell presented evidence that he lost interest in previous hobbies, such as raising animals, working on cars, and playing with his dogs. According to testimony from his wife and friends, he no longer socializes and pushes his family away. His personality has also changed from having a positive to a negative outlook on life. His personality change caused marital difficulties and sexual dysfunction. Campbell also presented significant medical evidence confirming his PTSD. An independent medical examiner, Dr. Thompson, and his personal doctor, Dr. Berard, both diagnosed Campbell with PTSD that is caused by a life-threatening event that invoked fear and helplessness. Campbell was provided psychological

medication, but his condition still magnified his physical pain and caused irregular sleeping patterns. His pain caused him severe agitation, anger, and resentment leading to several major disputes with his wife and friends. He had distressing dreams and has some fear of enclosed spaces and water. Campbell's post-traumatic stress disorder lasted over three years.

As the trial court noted, the events and injury recounted in this case bear much factual similarity to those in *Nielsen,* 768 So.2d at 157-61. Nielsen was a diver who was "forced to abandon ship [because of a hurricane] and jump into the thirty to thirty-five foot seas. Although several other individuals and crew members perished at sea, plaintiff managed to swim to a life raft. After fighting the seas for hours in the life raft, he was rescued by" another boat. *Id.* at 151. At trial, the expert witness "opined that Nielsen was permanently and totally disabled from working on the open water and that he would continue to need psychiatric care for approximately two more years to deal with his symptoms. As of the time of trial, Nielsen stated that while his symptoms are not as severe, he continues to suffer from flashbacks, nightmares, general paranoia and anxiety." *Id.* at 161. In *Nielsen,* the Louisiana courts upheld a general damages award of $350,000 for PTSD. *Id.* at 157-61.[1] Nielsen and Campbell's injuries are comparable. Parker presents many damages awards cases from Louisiana courts, but none of these cases are factually similar or present factually similar injuries.

We therefore rely on the most comparable case, *Nielsen,* which awarded $350,000 for PTSD. Based on the award in *Nielsen,* a federal court could award up to $465,500 (133% of the *Nielsen* award), which is more than 2.3 times the award in this case. *Douglass,* 897 F.2d at 1344 n.14. The award here only accounts for approximately 43% of the maximum award permitted under

---

[1] The parties agreed that the plaintiff "recovered from the physical injuries" he sustained. *Nielsen*, 768 So.2d at 158. The only basis for the damages award was PTSD. *Id.*

*Nielsen*. The circumstances and the injury here are not so different from *Nielsen* that 43% of the award granted in *Nielsen* is "clearly excessive" or "disproportionate" so as to warrant remittur. We decline to apply the maximum recovery rule in this case.

## II. The District Court Did Not Abuse Its Discretion in Awarding Prejudgment Interest By Using An Interest Rate Higher Than the Federal Rate.

"Setting the rate of interest on a judgment is within the trial court's broad discretion." *Reeled Tubing, Inc. v. M/V Chad G,* 794 F.2d 1026, 1029-30 (5th Cir. 1986) (discussing the setting of the interest rate in an admiralty case). We review a district court's decision to award interest based on a state and not federal rate for an abuse of discretion. *Id.* at 1029. In *Reeled Tubing,* we acknowledged that a district court's decision to award interest based on a state rate does not transgress the district court's discretion. *Id.* at 1029. For the same reasons, the use of Louisiana's rate to determine the interest rate in this case would not be an abuse of discretion. *Id.* The burden is on the appellant to show some "inequity" that compels this court to choose a different rate. *Id.* at 1029-30; *Gulfgate Marine Transp. Co. v. A/S Dampskibsselskabet Svendborg (In re M/V Nicole Trahan),* 10 F.3d 1190, 1197 (5th Cir. 1994) (affirming the district court's choice unless appellant showed "inequity"). Parker presents no evidence of inequity apart from the fact that Campbell gets a higher return. We affirm the trial court's prejudgment interest award.[2]

---

[2] For the first time in its reply brief, Parker requests this court to remand the compensatory damage award so that the trial court may analyze the potential for contributory fault. We "will not consider a claim raised for the first time in a reply brief." *Haspel & Davis Milling & Planning Co. v. Bd. of Levee Comm'rs,* 493 F.3d 570, 579 n.29 (5th Cir. 2007). Parker justifies raising this new issue based on a recent decision of this court, *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 303-04 (5th Cir. 2008). Parker's justification is without merit because *Johnson* specifically relied on previous cases to find contributory negligence for a seamen who concealed material medical information. *Id.* (quoting *Savoie v. Otto Candies, Inc.*, 692 F.2d 363, 372 (5th Cir. 1982) and citing *Gavagan v. United States*, 955 F.2d 1016 (5th Cir. 1992)). *Johnson* is not an intervening decision that provides an "important clarification

## B. Campbell's Contentions

### I.     The Damage Awards Are Not "Clearly Erroneous"

On cross-appeal, Campbell contends that the awards for his PTSD and his back injury should have been higher. This court reviews damages awards for "clear error." *See Albany Ins. Co. v. Bengal Marine, Inc.*, 857 F.2d 250, 253 (5th Cir. 1988) ("Damages need not be proven with an exact degree of specificity, and we review the award under the clearly erroneous standard."). "'[A] factual finding may be set aside under the clearly erroneous rule only if we are left, on review of the evidence, with the firm and definite conviction that a mistake had been committed.'" *McDaniel v. Temple Indep. School Dist.*, 770 F.2d 1340, 1347 (5th Cir. 1985) (quoting *Oil, Chem. and Atomic Workers Int'l Union v. Ethyl Corp.*, 703 F.2d 933, 935 (5th Cir. 1983)). After reviewing the record and considering the briefs and oral arguments of the parties, we find no clear error in these awards.

Campbell also requests an additional $200,000 for mental anguish; Campbell, in his original claim, only specifies "post-traumatic stress disorder" as his psychological injury and not "mental anguish." Louisiana courts, in many instances, have treated mental anguish and post-traumatic stress disorder as describing the same category of injury if the plaintiff is actually diagnosed with PTSD. *See, e.g., Seals v. Shelter Ins. Cos.,* 894 So.2d 1259, 1262-63 (La. App. 2d Cir. 2005); *Wells v. Morgan Gas Co.,* 651 So.2d 951, 954-55 (La. App. 2d Cir. 1995). Moreover, in *Nielsen,* the primary psychological injury was PTSD, and that served as a basis for a $350,000 general damages award for all the psychiatric injuries alleged. *Nielsen,* 768 So.2d at 158. By comparing the award

---

in the law, and refusal to [apply the case] would have resulted in perpetuating incorrect law." *Am. Int'l Specialty Lines Ins. Co. v. Res-Care Inc.,* 529 F.3d 649, 661 n.28 (5th Cir. 2008). We will not consider this argument.

to *Nielsen,* the trial court did not clearly err in awarding $200,000 for Campbell's psychiatric injury.

## II.   The Trial Court Did Not Clearly Err in Relying on an Expert's Calculation of Lost Wages.

Campbell contends that the trial court clearly erred in relying on Parker's expert's calculation of lost wages and not on Campbell's expert's calculation of lost wages. In *Culver v. Slater Boat Co.,* we stated that "calculation of the lost income stream *begins* with the gross earnings of the injured party at the time of injury." 722 F.2d 114, 117 (5th Cir. 1983) (emphasis added). In subsequent cases, we calculated the "gross earnings" at the time of injury by estimating the earnings from past data when earnings data was inconsistent. *See, e.g., Herbert v. Wal-Mart Stores, Inc.,* 911 F.2d 1044, 1050 (5th Cir. 1990); *Hernandez v. M/V Rajaan,* 841 F.2d 582, 587-88 (5th Cir. 1988) (relying on part-time earnings of the past three years to derive future earnings loss); *see also Noack v. Am. S.S. Co.,* 491 F.2d 937, 942 (6th Cir. 1974) (using a five year period to estimate pre-injury earnings because of the fluctuations in earnings). Consistent with these authorities, Parker's expert relied on Campbell's average earnings over the past five years because of Campbell's inconsistent work history. Campbell's expert acknowledged that Campbell "was not a 40 hour a week worker by any stretch of the imagination." The trial court based its opinion on Parker's expert's opinion; its factual finding is not clearly erroneous. *See, e.g., Gates v. Shell Offshore, Inc.,* 881 F.2d 215, 218 (5th Cir. 1989).[3]

For the reasons stated above, we AFFIRM the district court's judgment in all respects.

---

[3] Unlike *Randolph v. Laeisz,* 896 F.2d 964, 967-68 (5th Cir. 1990), Campbell does not assert any clear error in Parker's expert's method for calculating Campbell's lost wages. Campbell only contends that it was an unsuitable method in this case.