PATRICK E. HIGGINBOTHAM, Circuit Judge:
Wallace Boudreaux .sued Transocean Deepwater, Inc. to recover maintenance and cure for a back injury allegedly sustained on the job. Transocean successfully established a defense to liability under McCorpen v. Central Gulf Steamship Corp. and counterclaimed to recover benefits it had already paid to Boudreaux. The district court awarded summary judgment to Transocean on its counterclaim, concluding that Transocean’s successful McCorpen defense automatically established its right to restitution — a right of action never before recognized in maritime law. We reverse and render.
I.
Boudreaux began working for Trans-ocean in January 2005. He failed to disclose serious back problems in Trans-ocean’s pre-employment medical questionnaire, affirmatively answering “no” to several inquiries regarding any history of back trouble. Less than five months after his hire, Boudreaux claimed that he had injured his back while servicing equipment. As a consequence, Trans-ocean paid the seaman maintenance and cure for nearly five years.
In April 2008, Boudreaux filed suit against Transocean alleging a right to further maintenance and cure and seeking punitive damages for Transocean’s alleged mishandling of past benefits. During discovery, Transocean obtained evidence of Boudreaux’s pre-employment history of back problems. Transocean filed an unopposed motion for partial summary judgment on Boudreaux’s claim for further benefits, invoking McCorpen as a defense to maintenance and cure liability. Under McCorpen, a maritime employer does not owe maintenance and cure if it can establish that a seaman intentionally misrepresented or concealed a pre-existing medical *503 condition that is material to the employment and is causally connected to the injury allegedly sustained.[1]
The district court granted Transocean’s unopposed motion. Thereafter, Trans-ocean filed a counterclaim to recover the maintenance and cure payments it had already made to Boudreaux. Transocean moved for summary judgment on the counterclaim, contending that its successful McCorpen defense automatically established its right to restitution under general maritime law. Prior to the district court’s ruling on the motion, Transocean and Bou-dreaux reached a bracketed settlement that resolved all issues pending before the court, with the exception of Transocean’s counterclaim. Under thé settlement, Bou-dreaux is entitled to a lesser sum of money if Transocean succeeds on its counterclaim.
Though Transocean acknowledged that its restitution-via-MeCbrpe% theory was novel, it urged the district court to fashion a new maritime right of action based on state law principles of fraud and unjust enrichment. In a thoughtful opinion, the district court agreed and awarded summary judgment to Transocean on its counterclaim, albeit without accepting Transocean’s state-law theories. Bou-dreaux appeals.
II.
Transocean asks this Court to recognize a novel maritime cause of action, urging that an employer who establishes a McCorpen defense to maintenance and cure liability should thereby automatically gain an affirmative right to restitution for benefits previously paid. We decline the invitation.
A maritime employer’s obligation to pay an injured seaman maintenance and cure is an essential part of the employment relationship, whether characterized as contractual or otherwise.[2] In Still v. Norfolk & Western Railway Co., Justice Black’s opinion for the Court clarified that a worker’s fraud in procuring his employment does not vitiate the employment relationship, allowing him to maintain a suit for damages under the Federal Employers’ Liability Act.[3] Courts including ours have since recognized that Still’s logic and congressionally rooted paternal policy applies with equal force to seamen.[4] The McCorpen defense rests, if somewhat uneasily, alongside Still and progeny, permit *504 ting an employer to extricate itself from its maintenance obligation by demonstrating that the seaman “intentionally concealed” a material medical condition in obtaining his employment.[5] Though most courts have accepted McCorpen, Transocean’s novel attempt to invoke the case as an affirmative right of recovery finds virtually no support,[6] and we are not inclined to accede.
The district court’s concern with the egregious facts here is understandable, but the sweeping counterclaim it endorses would mark a significant retreat from our hoary charge to safeguard the well-being of seamen.[7] Already, even without fraud, an employer may offset any Jones Act damages recovered by the seaman to the extent they duplicate maintenance and cure previously paid.[8] This, if the employer “show[s] that the damages assessed against it have in fact and in actuality been previously covered.”[9] Yet we are urged to strike a new balance and allow an employer who establishes a McCorpen defense to automatically recover prior maintenance, without requiring the employer to prove duplication and regardless of the outcome of the primary suit.[10] In cases where no damages are recovered, or the award is insufficient to offset the seaman’s restitution liability, the employer would gain an affirmative judgment against the seaman. Although most likely uncollectible, the judgment would stand as a serious impediment to the seaman’s economic recovery, and its threat would have a powerful in terrorem effect in settlement negotiations.
Our concern with the district court’s approach is heightened by the fact that McCorpen does not, as suggested, require the employer to establish that the seaman acted with a level of culpability akin to that *505 required for common law fraud. Whereas fraud hinges on the subjective state of mind of the alleged wrongdoer,[11] thus generally falling “within the realm of the trier of fact because it so depends on the credibility of witnesses,”[12] this Court held in Brown v. Parker Drilling Offshore Corp. that McCorpen “does not require a finding of subjective intent [to conceal]” and is satisfied as a matter of law if the seaman “fails to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information.”[13] Applying this “objective” McCorpen test, the Broim panel overturned a jury verdict that the seaman had not intentionally concealed his medical history.[14] In light of Brown, a restitution-via-McCorpen counterclaim would, in practice, threaten injured seamen with the specter of crushing liability for misstatements found material.[15] With respect, such a result is inimical to the existing fabric of maritime law.
Transocean asks us to weigh again conflicting values — of protecting seamen from the dangers of the sea, and employers from dishonesty. While in this calculus, there is a stronger case for the employer if, under ordinary rules of scien-ter, a trier of fact determines that the seaman acted with subjective intent to defraud, we need not assess whether the district court made such findings in this case. We adhere to the balance that Justice Black struck fifty-one years ago in Still, a balance that has obtained to date. A seaman’s fraudulent misrepresentation of his health history does not terminate the employment relationship, nor does it relieve the employer of its duties to the seaman should he suffer injury in its employ. As the seaman retains his damages remedy, his right to retain maintenance and cure already paid ought be an a fortio-ri case — after all, the obligation is unqualified and definite, and the employer’s right to an offset against damages only weds the two.[16] Both flow from injury suffered by the seaman during the course of his employment,[17] and neither are lost by the *506 seaman’s fraud in securing his employ.
We are offered no reason to depart from precedent. There is only the change of advocates and judges, by definition irrelevant to the settling force of past jurisprudence — always prized but a treasure in matters maritime. All this against the cold reality that the sea has become no less dangerous, and the seaman no less essential to maritime commerce.
III.
We REVERSE the district court’s order awarding summary judgment to Trans-ocean on its counterclaim and RENDER judgement for Boudreaux.

. McCorpen v. Central Gulf S.S. Corp., 396 F.2d 547, 549 (5th Cir.1968); see also Johnson v. Cenac Towing Inc., 544 F.3d 296, 301 (5th Cir.2008).

. E.g., Cortes v. Baltimore Insular Lines, 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368 (1932) (Cardozo, J.) ("The duty to make [maintenance and cure payments] is imposed by the law itself as one annexed to the employment.”); McCorpen, 396 F.2d at 548 ("The shipowner’s obligation [to pay maintenance and cure] is deep-rooted in maritime law and is an incident or implied term of a contract for maritime employment.”); Terrebonne v. K-Sea Transp. Corp., 477 F.3d 271, 279 (5th Cir.2007) ("[M]aintenance and cure is an intrinsic part of the employment relationship, separate from the actual employment contract .... [it] cannot be contracted away.”).

. See 368 U.S. 35, 45, 82 S.Ct. 148, 7 L.Ed.2d 103 (1961) ("[T]he status of employees who become such through other kinds of fraud ... must be recognized for purposes of suits under the Act. And this conclusion is not affected by the fact that an employee’s misrepresentation may have, as is urged here, contributed to the injury or even to the accident upon which his action is based.”).

. See, e.g., Johnson, 544 F.3d at 301-02 ("The Supreme Court’s decision in Still makes clear that a seaman ... is not barred from suit under the Jones Act because he conceals a material fact in applying for employment.” (citations omitted) (internal quotation marks omitted)); Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 178 (5th Cir.2005) ("The Supreme Court has effectively foreclosed any argument that misrepresentations in an application for employment might void the neces *504 sary employment relation.”) (quoting Reed v. Iowa Marine & Repair Corp., 143 F.R.D. 648, 651 (E.D.La.1992)); Omar v. Sea-Land Service, Inc., 813 F.2d 986, 989-90 (9th Cir.1987) (“Maintenance and cure ... derives from a seaman's employment on a vessel ... The remedial nature of the Jones act and maritime law requires a less technical, contractual definition of ‘employee’ than Sea-Land asks us to use.”) (citing Still, 368 U.S.at 45, 82 S.Ct. 148).

. McCorpen, 396 F.2d at 549; see, e.g., Johnson, 544 F.3d at 301-02 ("Cenac continues to urge that the McCorpen defense should extend to 'any damages sought by a seaman for only the aggravation of his prior and intentionally concealed medical condition.’ This legal argument, which we review de novo on appeal, is foreclosed by [Still ].”).

. In Vitcovich v. Ocean Rover O.N., the Ninth Circuit implicitly sanctioned a restitution-via-McCorpen counterclaim; however, this decision was unpublished and devoid of analysis. See No. 94-35047, 1997 WL 21205 (9th Cir. Jan. 14, 1997). Courts that have meaningfully engaged with the maritime implications of a restiiution-via-McCorpen right of action have rejected Vitcovich. See, e.g., Am. River Transp. Co. v. Benson, 2012 WL 5936535, at *5 (N.D.Ill.2012); Hardison v. Abdon Callais Offshore, LLC, 2012 WL 2878636, at *7 (E.D.La.2012); Dolmo v. Galliano Tugs, Inc., 2011 WL 6817824, at *2 (E.D.La. Dec. 28, 2011), aff'd without opinion, 479 Fed.Appx. 656 (5th Cir.2012); see also Kirk v. Allegheny Towing Inc., 620 F.Supp. 458, 461 (W.D.Pa.1985).

. See Karim v. Finch Shipping Co. Ltd., 374 F.3d 302, 310 (5th Cir.2004) ("[T]he protection of seamen was one of the principal reasons for the development of admiralty as a distinct branch of law.” (citation omitted)).

. See Wood v. Diamond M Drilling Co., 691 F.2d 1165, 1171 (5th Cir.1982).

. Wood, 691 F.2d at 1171 (internal quotation marks omitted) (holding that employer failed to carry its burden to demonstrate that its past payment of maintenance and cure entitled it to an offset against Jones Act damages award for lost wages).

. An employer's successful McCorpen defense does not prevent the seaman from suing for Jones Act negligence. Brown, 410 F.3d at 178.

. Southland Secs. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 366 (5th Cir.2004) ("[T]he requisite rule 10(b) scienter ... is consistent with the general common law rule that where, as in fraud, an essentially subjective state of mind is an element of a cause of action also involving some sort of conduct, such as a misrepresentation, the required state of mind must actually exist in the individual making ... the misrepresentation ....”).

. D & J Tire, Inc. v. Hercules Tire & Rubber Co., 598 F.3d 200, 205 (5th Cir.2010) (quoting Rimade Ltd. v. Hubbard Enters., Inc., 388 F.3d 138, 144 (5th Cir.2004) (quoting Beijing Metals & Minerals v. Am. Bus. Ctr., 993 F.2d 1178, 1185 (5th Cir.1993))).

. Brown v. Parker Drilling Offshore, Corp., 410 F.3d 166, 174 (5th Cir.2005) (quoting Vitcovich, 1997 WL 21205, at *3).

. See id.; see also id. at 181 (Stewart, J. dissenting) ("The initial majority opinion ... completely substituted its credibility determinations for those of the jury in this case in an effort to rescue the shipowner from what the majority considered to be a legally deficient jury verdict. On rehearing, the majority strains to characterize this case as one which principally turns on the resolution of an objective issue of law and not on credibility, a traditional jury province, as the trial judge saw it and as I saw it after reading the trial record.”).

. True enough, evidence that a seaman “failed to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information” provides objective evidence of a subjective intent to deceive, evidence that, even under a traditional definition of scienter, would generally suffice to create a fact issue for trial. However, such evidence is not sufficient to sustain a finding of fraud as a matter of law.

. See Brister v. A.W.I., Inc., 946 F.2d 350, 360-61 (5th Cir.1991).

. Fitzgerald v. U.S. Lines Co., 374 U.S. 16, 18, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963) *506 ("[R]emedies for negligence, unseaworthiness, and maintenance and cure ... serve the same purpose of indemnifying a seaman for damages caused by injury, depend in large part upon the same evidence, and involve some identical elements of recovery.”).